709
26....520
53... 447

JOHN MONTGOMERY, Plaintiff in Error,

*vs.*

EDWARD DEELEY, Defendant in Error.

ERROR TO THE WAUSHARA CIRCUIT COURT.

In an action of slander, the rule of construction is, that the words complained of, are to be taken in the sense which is most obvious and natural, and in which those to whom they were spoken were most apt to understand them.

In an action of slander, if the words spoken, if true, would subject the person of whom they were spoken, to an indictment for a crime involving moral turpitude, or subject him to infamous punishment, then the words themselves are actionable.

By the "Ashburton treaty" murder is recognized in the United States as a felony, in all places subject to the crown of Great Britain, and to charge by spoken words in this State, another with the crime of murder committed in Ireland, is actionable

This was an action of trespass on the case for slander, brought by the plaintiff in error, in the Circuit Court for Waushara county. The declaration contained two counts, the second of which is substantially as follows : that the said defendant did falsely and maliciously speak, publish and declare false and scandalous words of and concerning the plaintiff, to wit: "He (the said plaintiff meaning) killed a man in Ireland. He (the said plaintiff meaning) murdered a man in Ireland. Montgomery (the said plaintiff meaning) killed a man in Ireland, and I (the said defendant meaning) have sufficient proof of it. Montgomery (the said plaintiff meaning) shot a man in Ireland ; meaning thereby to charge the said plaintiff with the commission of a crime punishable with death, or the crime of murder."

To which declaration the defendant pleaded the

June Term
1854.

Montgom-
ery
vs.
Deeley.

general issue. The cause was tried before a jury, and the evidence of three witnesses produced to show that the plaintiff in error had been heard to say at different times, the words set forth in the declaration. The defendant then moved for a non-suit for the reasons, *First*, That the plaintiff had included in each count in his declaration, more than one set of words without avering or proving that they were spoken at the same time, and has failed to prove the speaking of the first set of words in either count ; and that he cannot, upon the proof of any subsequent set of words in either of said counts recover. *Second*, Because the said plaintiff has not alleged nor has he proven upon this trial, that by any of the laws of Ire land, it would subject the defendant to degrading pains and penalties to commit the crime of murder in that government.

Which motion was granted, and judgment rendered in favor of the defendant.

*W. A. Bugh*, for the plaintiff in error.

*Collins, Smith & Keyes*, for the defendant in error·

*By the Court*, CRAWFORD, J. The judgment of non-suit in this case must be reversed, and a new trial ordered. The testimony set forth in the bill of exceptions sufficiently established the second count in the declaration. The evidence was that the defendant in the action had, in conversations concerning the plaintiff, spoken of him the following words : " the murderer that murdered a man in Ireland," and " he murdered a man in Ireland."

The second reason assigned in the motion for non-suit in the Circuit Court, and which most likely was the ground upon which the motion was granted, is

that it is not alleged in the declaration, nor was there any proof that the crime of murder would subject the perpetrator to degrading pains and penalties, by the laws of Ireland.

The rule of construction which, in modern times, has prevailed in actions of this nature is, that the words complained of are to be taken in the sense which is most obvious and natural, and in which those to whom they were spoken were most apt to understand them. In *Gibbs vs. Dewey*, 5 *Cowen*, 203, Mr. Justice Sutherland says, " If the words spoken in their natural and ordinary signification, import a criminal charge, it is sufficient to render them actionable." See also, *Hoyle vs. Young*, 1 *Wash.* 150 ; *Demarest vs. Haring*, 6 *Cowen*, 76 ; *Goodrich vs. Woolcott*, 3 *Cowen*, 239 ; *Chaddock vs. Brigg*, 13 *Mass.* 248 ; *Fowle vs. Robbins*, 12 *Mass.* 501 ; *Starkie on Slander*, 52.

Mr. Starkie, in his work on slander (650) tells us that with certain exceptions, having reference to cases where offences such as *treason, felony, &c.*, are imputed, the rule is, that the charge to be actionable, must impute to the plaintiff, an act of a *criminal nature*

Now, what is the charge imputed in the present case ? It is not the killing of a human being, which might be by accident, misfortune or in self-defence, but the most shocking and revolting species of homicide—the *murdering* of another. Sir Wm. Blackstone, in his commentaries, (book 4, p. 194) defines *murder* as a crime at which human nature starts, and which is almost universally punished throughont the world with death. It is not only an offence by being prohibited in the local enactments of different coun-

JUNE TERM
1854.

Montgom-
ery
vs.
Deeley

tries, but it is in itself a heinous crime, alike contrary to the laws of God and man. *Numbers, chapter* 35, *v.* 31.

The Supreme Court of the State of New York, in *Brooks vs. Coffin*, 5 *Johnson*, 188, say "Upon the fullest consideration we are inclined to adopt this as the safest rule and one which we think is warranted by the cases. In case the charge, if true, will subject the party charged to an indictment for a crime involving moral turpitude or subject him to an infamous punishment, there the words will be in themselves actionable."

It is incumbent on the courts of the State as well as those of the United States, to take judicial cognizance of all public acts of Congress, and treaties with foreign powers, and none of these are required to be proved.

By the treaty between the United States and the Queen of the United Kingdom of Great Britain and Ireland, commonly known as "the Ashburton treaty," ratified by the Senate of the United States, on the 22d day of August, 1842, it is provided that the respective governments shall, upon mutual requisition by them, "deliver up to justice all persons who, being charged with the crime of *murder*, or assault with intent to commit murder, or piracy, or arson, or robbery, or forgery, or the utterance of forged paper, *committed within the jurisdiction of either*, shall seek an asylum, or shall be found within the territories of the other," &c.

Now, this treaty, without any other proof, shows that in Ireland, which is a part of the British Empire, *and within its jurisdiction*, murder is a crime the perpetration of which is liable to to be reclaimed by

the British Government, and delivered up to justice by our own government, wherever found within the territorial limits of this Republic.

In this view of the case, the judgment in the court below was improperly rendered, and it must be reversed with costs, and a new trial awnrded.