## JOHN H. MORE, Appellant, *v.* JAMES GORDON BENNETT, Respondent.

n construing a publication alleged to be libelous, the scope and object of the whole article is to be considered, and such a construction put upon its language as would naturally be given to it. The test is, whether in the mind of an intelligent man the terms of the article and the language used naturally import a criminal or disgraceful charge.

Extrinsic averments are not necessary where the words used, giving them their natural construction, tend to injure the reputation of the subject, and expose him to hatred, contempt or ridicule.

The complaint in this action charged, in substance, that defendant published an article wherein the writer, after stating that a certain woman was a prostitute, alleged that, as he understood, she was under the patronage or protection of the plaintiff. The complaint alleged that this charge was false and malicious, and tended to blacken and injure plaintiff's reputation, and expose him to public contempt. Plaintiff was nonsuited upon the ground that the complaint did not state a cause of action, as it contained no averment that the publication intended to charge that the prostitute was under plaintiff's protection for illicit purposes.

*Held*, error; that the intent to charge a criminal patronage or protection was manifest in the publication; the complaint was sufficient, therefore, without such averments.

(Argued January 4th, 1872; decided May term, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial district, reversing an order of Special Term which set aside a nonsuit and granted a new trial, and dismissed the complaint with costs.

The action was for an alleged libel published in the New York Herald, contained in a letter addressed to the editor of that paper by Mrs. Kimball, widow of Lieut.-Col. Kimball, deceased.

The writer, after referring to certain matters relating to her deceased husband, says:

"Among the papers referred to as returned to me are my own private letters, scattered indiscriminately among the others, and returned to me after having been in the hands of a prostitute. And in her hands, too, are other household relics that are sacred to a wife. I find that I cannot obtain

them except through a long litigation by the public adminis-
trator. The police have called upon the woman, and she
refused to give up anything belonging to my husband. She
is, I understand, under the patronage or protection of a Mr.
More, agent of the Central railroad, who has also employed
the orderly of my late husband."

The plaintiff, in his complaint, alleged that he was a mar-
ried man, and that the defendant is the editor and proprietor
of the New York Herald, and that he (plaintiff) was referred
to, intended, and designated as the Mr. More, and that he
was thereby charged with having under his patronage or
protection a public prostitute, and that the publication was
malicious and false, and tended to blacken and injure his
reputation, and expose him to public hatred, contempt, etc.

At the close of the evidence upon the trial, the defendant's
counsel moved to dismiss the complaint, on the ground that
the complaint did not state facts sufficient to constitute a
cause of action. This motion was granted and defendant
excepted.

*William A. Coursen* for the appellant. The publication was
without ambiguity and libelous upon its face. (Bouvier's,
Dic., Libel, 5 Rep., 125; *Croop* v. *Tilney,* 3 Salk., 226;
Per BAYLY, J., 3 B. and C., 33; *Clement* v. *Chirrs,* 9 B.
and C., 172; *Churchill* v. *Hunt,* 2 B. and A., 685; *Brydell*
v. *Jones,* 4 M. and W., 446; *Steele* v. *Southwick,* 9 J. R., 215;
*Cooper* v. *Greeley,* 1 Denio, 347, 361, 362; *Snyder* v.
*Andrews,* 6 Barb., 43; *Perkins* v. *Mitchell,* 31 Barb., 461.)
The complaint was sufficient. (Code, §§ 142, 159, 164; 1.
Chitty on Pleadings, 406, 407; *Wesley* v. *Bennett,* 5 Abb.,
498; *Ensign* v. *Sherman,* 14 How., 439; *Hunt* v. *Bennett,*
19 N. Y., 173; *Dias* v. *Short,* 16 How., 322; *Bolton* v. *Hay-
ward,* 8 Modem., 24; *Holt* v. *Sethfield,* 6 Term. R., 691.)

*Amasa J. Parker* for the respondent. The publication is
not actionable *per se* (1 Kent. Com., 621, 630; *Harrison* v.
*Stratton,* 4 Esp. Cas., 218.) Extrinsic averments were there-

fore necessary. (*Cruger* v. *H. R. R. Co.*, 3 Kent, 201; *Bartholomew* v. *Bentley*, 15 Ohio, 670; *Harrison* v. *King*, 7 Taunt., 431; *Miller* v. *Buckdon*, 2 Brolstr., 10; *Pike* v. *Van Wormer*, 5 How., 171.) Words liable to two different interpretations must be construed in an innocent sense, unless the contrary is averred. (*Button* v. *Haymon*, 8 Modem., 24; *Holt* v. *Schofield*, 6 Tenn., 691; Townshend on Slander, § 142; *Robinson* v. *Jermyn*, 1 Price, 11; *Barnett* v. *Allen*, 3 H. & N. 376; *Hopkins* v. *Beedle*, 1 Cal., 347; *Vaughn* v. *Havens*, 8 John., 109; *Crookshank* v. *Gray*, 20 Johns., 344; *Bullock* v. *Keen*, 9 Cow., 30; *Ross* v. *Rouse*, 1 Wend., 475; *Joralemon* v. *Pomeroy*, 2 N. J., 271; *Gesling* v. *Morgan*, 32 Penn. St. R., 273; and other cases in note to section 142 of Townshend on Slander.) There is no question for a jury unless the injurious meaning is alleged in complaint and denied in answer. (*Mott* v. *Stoddard*, 38 Vt., 25.) Actions for libel are not to be encouraged; *Alsop* v. *Alsop*, 5 H. & N., 534; *Bennett* v. *Williamson*, 4 Sand., 67.)

HUNT, C. The plaintiff has received a scant measure of justice in the disposition of this case. The defendant was allowed to amend his answer by striking out those parts which admitted the publication of the libel, and substantially admitted it to be a libel. The plaintiff was refused permission to amend his complaint by adding a statement, the presence of which was held necessary to enable him to prove that the publication was libelous. For want of such a statement the plaintiff was thereupon nonsuited, and an allowance of $500 was granted to his adversary upon a trial which, to judge from the report, could not have occupied more than two hours. The nonsuit was set aside at the Special Term, but was affirmed upon an appeal to the General Term of the first district.

The complaint charged the publication of a letter written by Mrs. Kimball, set forth at length, in which she charged, among other things, that letters of her deceased husband were returned to her, after having been in the hands of a

prostitute; that in the hands of this prostitute were other relics sacred to a wife; that the police had called upon this woman and she refused to give up anything belonging to the writer. The letter added: "She (the prostitute) is, I understand, under the patronge or protection of a Mr. More, agent of the Central railroad." The plaintiff alleges that this charge respecting himself was false and malicious; that it tended to blacken and injure his reputation and expose him to public contempt. He was nonsuited on the ground that he did not allege that the publication intended to charge that the prostitute was under his protection for illicit purposes, and that therefore his complaint stated no cause of action.

In my judgment no man can read this statement without understanding it to contain a charge that this woman was the kept mistress of the plaintiff. To state that Anne Smith is a prostitute, and she is under the patronage or protection of Mr. More, is a charge that she is kept, protected or patronized for the purposes of prostitution. That a loose woman is under the patronage of a man named, is a technical statement that she is supported by him, for the purpose of sexual indulgence. When read in a book or newspaper, it would naturally have this only meaning. Add to this that the charge was false, made to blacken the character of More, and the statement is plainly within the law of libel. No one would understand this statement as meaning that the prostitute was an inmate of a reformatory institution, and that Mr. More was one of its supporters and thus protected and patronized her. Such a meaning to the words is possible, but it is most unnatural and forced. That any intelligent man would so understand the charge would exhibit a degree of charity and kindness of heart not often found in this censorious world.

In *Cooper* v. *Greeley*, (1 Denio, 358), the rule is thus laid down by JEWETT, J.: "It is the duty of the court in an action for a libel to understand the publication in the same manner that others would naturally do. The construction which it behooves a court of justice to put on a publication which is alleged to be libelous, is to be derived as well from the expres-

sion used as from the whole scope and apparent object of the writer." To this rule he cites various authorities. I understand the principle to be there correctly laid down, to wit, the scope and object of the whole article is to be considered, and such construction put upon its language as would naturally be given to it. That case afforded a good illustration of the rule. Mr. Cooper had sued Mr. Greeley for a libel. The defendant in his newspaper, in commenting on the proceeding says: "There is one comfort to sustain us under this terrible dispensation. Mr. Cooper will have to bring his action to trial somewhere. He will not like to bring it in New York, for we are known here, nor in Otsego, for he is known there." Another action was brought for the libel contained in the last sentence quoted, which it was alleged intended to charge that the plaintiff was in such bad repute in Otsego county that he would not like to bring a suit there. The question came up on demurrer, and the declaration was held good. The opinion to which I have referred is an elaborate one, reviewing all the cases upon the subject.

In the case of *Stone* v. *Cooper* (2 Denio, 293), an award had been made against another editor, who, in speaking of it, said, in his paper: "The money will be forthcoming on the last day allowed by the award, but we are not disposed to allow him to put it into Wall street for shaving purposes before that period." On demurrer, this was held not to be libelous, on the ground that it fairly meant that the money was to be used in Wall street in buying, at a discount, existing securities, and that such purchase was neither illegal nor disreputable. Both cases were decided upon the principle that the language is to be construed fairly and naturally. It is not enough that a critic or a malignant may torture the expressions into a charge of a criminal or disgraceful act. Nor is it enough, on the other hand, that a possible and far-fetched construction may find an inoffensive meaning in the language. The test is whether, to the mind of an intelligent man, the enor of the article and the language used naturally, import at criminal or disgraceful charge. In this case, the letter is cen-

sorious and fault-finding. Its object seems to have been to show the injuries the writer had received from those who had been near her late husband at the time of his death. In addition to what has been already stated, it alleged that money was contributed unnecessarily and misapplied; that the watch, the horse, and other articles of her husband had never been accounted for to her; that she was then trying to get even her little dog from the police; that her own private letters had been scattered among others indiscriminately, and returned to her after being in the hands of a prostitute; that in the hands of this prostitute are other relics sacred to a wife, which she can only obtain through a long litigation; that the police have called upon this woman, who refuses to give up to her anything belonging to her husband; and that she (this woman, this prostitute, who has done these things) is understood to be under the patronage or protection of a Mr. More, of the Central railroad, who has also employed the orderly of her late husband. The suggestion that this language does not, of itself, impute a charge that Mr. More keeps this prostitute as his mistress, because she may be under his protection as a member of some reformatory institution managed by him, is extravagantly far-fetched, and is hostile to the whole tenor of the communication. The charge that she is under the patronage of Mr. More is the culmination of the accusations preceding, and was plainly intended to charge a criminal patronage or protection. Every man or woman who read it must have understood such to be its meaning.

Words which are, of themselves, actionable; which, in their natural construction, tend to injure the memory of the dead, or the reputation of one alive, and expose him to hatred, contempt or ridicule, need no averment that they were intended to impute such offence. It is only where the words do not, of themselves, fairly charge the offence, that extrinsic averments are necessary. (*Cooper* v. *Greeley*, 1 Denio, 361; *Croswell* v.

*Weed,* 25 Wend., 621.) In my opinion, the complaint was sufficient, and the cause of action was fairly made out. I am for reversal and new trial.

All concur, LEONARD, C., not sitting.

Judgment reversed.