EDWARD WIEMAN, JR., BY NEXT FRIEND v. JOHN P. MABEE ET AL.

*Libel—Bad moral character—privileged communication.*

A communication, representing that a certain person was of bad moral character, and wholly unfit to teach and have the care of a district school, was made to a township superintendent, by persons interested in a particular school within his jurisdiction, for the sole purpose of preventing the issue to the person so charged, of a license to teach the school. *Held,* that it was a privileged communication, and abundantly justified by proof that he was a habitual blasphemer and profane person, and an open violator of the Sabbath.

A charge of bad moral character, if made generally, is not fully justified by proof of profanity and Sabbath-breaking.

A person is responsible for such meaning of his language as is most natural, and is actually by his own fault, accepted under the particular circumstances. But there is no responsibility for any other meaning than that which is shown to have been intended and actually understood.

An action for libel will not lie on a communication relating to personal character, if made in good faith and for an honest purpose by persons concerned, and to the proper person. Nor will it lie when such a communication is untrue, if it is not maliciously made.

Error to Macomb.　Submitted Jan. 20.　Decided Jan. 28.

CASE FOR LIBEL.　Plaintiff brings error.　Affirmed.

*Irving D. Hanscom* and *A. B. Maynard* for plaintiff in error.

*James B. Eldredge* for defendant in error.

CAMPBELL, J.　Plaintiff sued defendants for libel in publishing of him that he was a man of bad moral character, and wholly unfit to teach and have the care of a district school. This charge was made in an affidavit made by some of the defendants, and a petition of others directed to the superintendent of schools of the township of Lenox, in Macomb county, and the papers were intended to prevent the licensing of Wieman as a teacher in the district where

the signers lived. The declaration, in addition to general damages, averred that the plaintiff was thereby deprived of getting such license.

The defense rested on the privileged character of the publication, and also averred, by way of justification, that Wieman was a habitual blasphemer and profane person, and an open violator of the Sabbath by hunting, sports and in other ways.

On the trial there was no testimony tending to prove that these papers were got up for any purpose or used for any purpose except to be laid before the superintendent of schools to prevent his granting-a license to Wieman. It also appeared that the papers were drawn by counsel as expressing properly the result of the charges of the parties, which were detailed to him in full, and related mainly to the bad language and Sabbath-breaking acts of plaintiff, and that they were informed the papers were shaped as they should be for that purpose. It appeared further that in laying the papers before the superintendent they explained to him fully that their objections were the same before referred to and no other, and were accompanied with manifestations of an entire absence of personal ill will.

There was evidence of his general good character in other repects. There was also evidence of his habitual use of profane and bad language before his scholars as well as elsewhere, and of such open and conspicuous Sabbath-breaking as offended his neighbors. There was some dispute concerning one or two acts, but none upon the general result.

The court below held the communication was privileged unless both false and expressly malicious. It was also held that a man who habitually violated his duty by profanity and Sabbath-breaking, was of bad moral character.

If this had been a libel published generally, and without reference to any particular purpose, it is very probable that its meaning might be regarded as covering a kind of conduct different from that proved against plaintiff here, and that, by reason of the difference, a justification might not be complete that went no further. Language does not always and

in all places convey the same impression, and a person is liable for the meaning that is most natural and is actually, by his own fault, fairly accepted under the circumstances.

But, on the other hand, where the meaning intended to be conveyed, and actually understood, is shown, there can be no responsibility incurred for any other. In the present case the writings were understood by the superintendent precisely as they were meant to be. It was his duty by law to give no license to any one unless such as " he shall deem qualified in respect to moral character, learning, and ability to instruct and govern a school." Laws 1875, p. 36. We do not think any superintendent would need vindication for being dissatisfied with the moral character of a teacher who has the faults complained of by these parties who opposed the licensing of plaintiff. A superintendent who should subject young children to such influences, would be very censurable.

In the present case the communication was fully privileged. It was made by persons interested in the school, to the person qualified to receive and act on the petition, for. an honest purpose, and with an honest belief in the justice of their action. In such cases no action can be maintained even if the complaint is untrue, if not maliciously made. *Foster v. Scripps* 39 Mich. 376 , *Dickeson v. Hilliard* L. R. 9 Exch. 79 ; *Harrison v. Bush* 5 El. & Bl. 344.

There is no error in the proceedings and the judgment must be affirmed with costs.

The other Justices concurred.