# CASES DETERMINED

IN THE

# ST. LOUIS COURT OF APPEALS,

## OCTOBER TERM, 1882.

---

STATE OF MISSOURI, Respondent, *v.* WILLIAM J. KOUNTZ, Appellant.

### October 17, 1882.

1. The publication of one copy of a newspaper within the jurisdiction is sufficient to complete the offence of publishing a libel.

2. If the defendant causes a copy of a newspaper to be sent to the city where the person libelled resides, and the paper is read by persons into whose hands it thus comes, this is a publication of a libel.

3. No inuendo is necessary to explain the word "defaulter," used in a publication to express a disqualification for an office of trust.

APPEAL from the St. Louis Court of Criminal Correction, CADY, J.

*Affirmed.*

JOHNSON, LODGE & JOHNSON, for the appellant.

M. W. HOGAN and J. C. NORMILE, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

The defendant was convicted under an indictment for causing to be printed and published a criminal libel in these words: "Captain John was elected harbor-master of St. Louis, and could not qualify because he was a defaulter." The words appeared in an editorial article about Captain John W. Carroll, in the *Allegheny Evening Mail*, a news-

paper published in the state of Pennsylvania. The testimony tended to prove that the manuscript from which the article was printed was in the handwriting of the defendant; that accompanying it was a note in the same handwriting, requesting its insertion by one person having a business connection with the newspaper, without informing another person having a similar connection, of the authorship, and saying that the writer would furnish a list of persons to whom marked copies of the paper should be sent; that, at a time prior to the publication, the defendant promised to send the paper regularly to Silas Adkins, a witness, residing in the city of St. Louis, and that thereupon the paper was regularly received by Adkins for several years, up to and after the publication of the alleged libel; that the paper containing the alleged libel was so received in St. Louis by Adkins, who read the article and showed it to the prosecuting witness and others.

It is contended that there was no sufficient connection of the defendant with any publication of the libel in St. Louis to confer jurisdiction of the alleged offence. It may be true that no presumption of circulation in Missouri can be indulged, on general principles, as to a newspaper published in Pennsylvania. But the publication of a single copy within the jurisdiction may complete the offence, as well as that of a thousand. There was at least competent evidence in this case, from which it could be inferred that the defendant caused a copy of the paper containing the libellous article to be sent to St. Louis, in order that it might there be read by persons into whose hands it might fall, and that such consequences actually followed. Nothing more was needed to charge the defendant with a publication in the city of St. Louis.

It is objected that the word "defaulter" has many meanings which impute nothing criminal, and that, therefore, the indictment is defective in not showing, by inuendo or otherwise, that the word was used and understood in a sense implying crime. There are many words in our lan-

guage which may convey crime, or something very different, according to the connection in which they appear. "You *have stolen* my heart," implies nothing more than a certain ascendency acquired over the speaker's affections, while "You *have stolen* my purse," as clearly imputes a larceny. When the term *defaulter* is employed to explain a disqualification for holding a public office, but one meaning can attach to it in the minds of all persons of ordinary intelligence, who have a common familiarity with the English language and its most popular idioms. No one will naturally connect it with a mere delinquency as to minor social obligations, or the payment of ordinary debts. The universal application of the word in that connection is matter for judicial notice. It describes one whose peculations have brought him within the cognizance of the law, to the extent, at least, of excluding him from a public trust. So to describe a citizen who is free from that stigma, is libellous.

"Courts take judicial notice of the meaning of words and idioms in the vernacular language, and no colloquium or inuendo is necessary to point their meaning." Towns. on Sland. & L. 180, note. In *Moore* v. *Bennett* (48 N. Y. 472), the alleged defamatory matter was that A., a prostitute, was under the patronage and protection of the plaintiff. The language was held actionable. The words "patronage" and "protection" abound in innocent meanings, and there was no inuendo pointing an injurious meaning. But they were there used as applying to the care of a prostitute, and in that connection are, in our vernacular, significant of a disreputable life. Where a whole sentence, taken together, has an unmistakable meaning of offensive import, there is no more need for an inuendo to explain or enlarge it, than in the case of a single word which expresses the same.

We find no sufficient reason for disturbing the judgment, which is therefore affirmed. All the judges concur.