Bradley vs. Cramer and others.

========

BRADLEY vs. CRAMER and others.

*December 15, 1883 — January 8, 1884.*

*Libel — Court and jury — Pleading.*

1. A written publication, though not charging a punishable offense, is libelous if it falsely and maliciously tends to subject the party to whom it refers, to social disgrace, public distrust, hatred, ridicule, or contempt.

2. The words employed in an alleged libel are to be construed in the plain and popular sense in which they would naturally be understood; and the scope and object of the whole writing are to be considered.

3. It is for the court to decide whether a publication is capable of the meaning ascribed to it by an innuendo, and for the jury to decide whether such meaning is truly ascribed to it.

4. The office of the innuendo is not to enlarge the meaning of words employed in an alleged libel, but merely to point out their application to facts previously alleged.

5. Under sec. 2677, R. S., a general averment that an alleged libel was published concerning the plaintiff dispenses with allegations of such extrinsic facts as would otherwise be necessary to show the application to him of the words employed; but it does not obviate the necessity of an averment, colloquium, or innuendo where they are essential to show the meaning of the words themselves.

6. Where there is no ambiguity in respect to the actionable quality of the language employed in an alleged libel, nor as to the person whom it concerns, no allegation by way of inducement or colloquium is necessary.

APPEAL from the Circuit Court for *Milwaukee* County. The case is thus stated by Mr. Justice CASSODAY:

" The complaint alleges, in effect, that the plaintiff is the widow of D. C. Bradley, who committed suicide in Kenosha county, December 25, 1881; that on January 4, 1882, the defendants, as publishers and proprietors of the *Evening Wisconsin*, maliciously published concerning the plaintiff in said newspaper the false and defamatory matter following, to wit:

" '*Probable Cause of D. J. Bradley's Suicide* (meaning the said D. C. Bradley). D. J. Bradley (meaning and referring to said D. C. Bradley), whose death resulted from nearly severing his head from his body with a razor a short time ago at Kenosha, was employed by James M. Beach, of this city, Wisconsin manager of the Wheeler & Wilson Sewing Machine Company, as an agent. He was stationed at Eau Claire. His son was sent by Mr. Beach to Chicago, and all his expenses paid while he learned the business. On the lad's return to Eau Claire he was allowed a pretty good salary, but *Mrs. Bradley* (meaning this plaintiff) sent him to school, hired a girl in his place at three dollars per week, and pocketed the balance of his wages (meaning that this plaintiff had fraudulently taken from said company wages for her son that he had not earned). In order to keep up a certain amount of style, other little irregularities were resorted to

by Bradley, which the company finally discovered. To make these peculations good to the company brought Mr. Bradley into financial difficulties. His wife (meaning the plaintiff) then left him. He went to Kenosha, where she was, but the interview is a secret, except as to the result, which was Bradley's death by suicide. While in this city Mr. Bradley was somewhat addicted to the use of liquors, but while at Eau Claire was said to have abandoned the habit. The exactions of his wife (meaning this plaintiff) are said to have been prime factors in bringing about self-destruction. The Wheeler & Wilson Sewing Machine Company regarded deceased with great favor, and did a great deal for him, still retaining his services after discovering the peculations above mentioned.'

" The complaint further alleges that by means of said publication the plaintiff was injured in her reputation, to her damage, etc.

" The defendants demurred to the complaint, and stated four grounds of demurrer; but three of these being clearly without merit, counsel confine their discussion on both sides to only one, which is, in effect, that it appears upon the face of the complaint that it does not state facts sufficient to constitute a cause of action. This demurrer was sustained by the court, and from the order sustaining the demurrer the plaintiff has appealed."

The cause was submitted for the appellant on the brief of *Quarles & Winslow*, and for the respondents on that of *Finches, Lynde & Miller*.

CASSODAY, J. It is settled that an action for libel may be sustained for words published which tend to bring the plaintiff into public hatred, contempt, or ridicule, even though the same words spoken would not have been actionable. *Lansing v. Carpenter*, 9 Wis., 542; *Cary v. Allen*, 39 Wis., 482; *Cottrill v. Cramer*, 43 Wis., 245. Written slan-

der is necessarily attended with such deliberation, and its publication is so well calculated to produce permanent mischief, that an action may be maintained for the publication of written words when it could not be maintained for the publication of the same words by mere oral discourse. Folkard's Starkie, § 154. Hence, every written publication which implies, or may be generally understood to imply, reproach, dishonesty, scandal, or ridicule, to any person, is a libel. Id., §§ 155, 156. Such written publication, though not charging a punishable offense, is nevertheless libelous, if it falsely and maliciously tends to subject the party to whom it refers, to social disgrace, public distrust, hatred, ridicule, or contempt. *Villers v. Monsley,* 2 Wils., 403; *Cox v. Lee,* L. R. 4 Exch., 284; *Miller v. Butler,* 6 Cush., 72; *State v. Spear,* 13 R. I., 324; *Cooper v. Greeley,* 1 Denio, 359. Words employed in an alleged libel are, of course, to be construed by courts and juries in the plain and popular sense in which other people would naturally understand them. Folkard's Starkie, § 155; *Montgomery v. Deeley,* 3 Wis., 709; *Weil v. Schmidt,* 28 Wis., 137; *Campbell v. Campbell,* 54 Wis., 94; 1 Denio, 358; *More v. Bennett,* 48 N. Y., 475. So, in construing the article in question, the scope and object of the whole article is to be considered, and such construction put upon its language as would naturally be given to it. *Spencer v. Southwick,* 11 Johns., 592; 1 Denio, 358; 48 N. Y., 476.

Counsel for the defendant is undoubtedly right in claiming the rule to be, in effect, "that it is for the judge to decide whether a publication is capable of the meaning ascribed to it by an innuendo, and for the jury to decide whether such meaning is truly ascribed to it." That is the rule held in *Blagg v. Sturt,* 10 Ad. & El. (N. S.), 899, by the court of Exchequer Chamber, affirming the judgment of the Queen's Bench, as announced by Lord Chief Justice DENMAN, and quoted and followed by this court in *Campbell v. Campbell,*

*supra.* That rule so announced has recently received the express sanction of the House of Lords. *Capital & C. B. L. v. Henty,* L. R. 7 H. L., 744. So this court has expressly sanctioned the rule contended for by the same counsel, to the effect that it is not the office of an innuendo to enlarge the meaning of the words employed in the publication, but merely to point out their application to the facts previously alleged. *Weil v. Schmidt, supra; Campbell v. Campbell, supra; Langton v. Hagerty,* 35 Wis., 151. This is abundantly supported by the numerous cases cited in the brief of counsel. Among these are *Fry v. Bennett,* 5 Sandf., 65; *Fleischmann v. Bennett,* 87 N. Y., 238; *Peterson v. Sentman,* 37 Md., 153; *Dyer v. Morris,* 4 Mo., 215; *Gosling v. Morgan,* 32 Pa. St., 273; *Goldstein v. Foss,* 4 Bing., 489. See, also, *Coburn v. Harwood,* 12 Am. Dec., 37, and note; *Van Vechten v. Hopkins,* 5 Johns., 211; *S. C.,* 4 Am. Dec., 339, and note. Perhaps there is no better illustration of the rule than the recent case in the House of Lords, above mentioned, where it was held that, in their natural meaning, the words " H. & Sons hereby give notice that they will not receive in payment checks drawn on any of the branches of the bank," were not libelous, and that the inference suggested by the innuendo, to the effect that the plaintiff was insolvent, was not such as reasonable persons would draw.

Whenever it becomes necessary to enlarge the meaning of the words employed in the publication in order to make them libelous, the complaint should, of course, contain the necessary averments or colloquium of facts showing that under the circumstances accompanying the publication the article was in fact libelous. In the leading case of *Van Vechten v. Hopkins, supra,* the majority opinion sums up the office of an averment, colloquium, and innuendo respectively, thus: " The use in pleading of an *averment* is to ascertain that to the court which is general or doubtfully expressed, so that the court may not be perplexed of whom or of what

it ought to be understood, and to add matter to the plea to make doubtful things clear. A *colloquium* serves to show that the words were spoken in reference of the averment. An *innuendo* is explanatory of the subject matter sufficiently expressed before; and it is explanatory of such matter only, for it cannot extend the sense of the words beyond their own meaning, unless something is put upon the record for it to explain." See, also, *Bloss v. Tobey*, 2 Pick., 328; *Carter v. Andrews*, 16 Pick., 6; *Snell v. Snow*, 13 Met., 278; *S. C.*, 46 Am. Dec., 730, and note; *Kinney v. Nash*, 3 N. Y., 182; *More v. Bennett*, 48 N. Y., 475.

Under our statute, however, it is unnecessary to state in the complaint any extrinsic facts for the purpose of showing the application to the plaintiff of the defamatory matters out of which the cause of action arose, but it is sufficient to state generally that the same was published concerning the plaintiff, and, if such allegation be controverted, the plaintiff is bound to establish on the trial that it was so published. Sec. 2677, R. S. Under this section the general averment that the article set forth was published concerning the plaintiff, dispenses with allegations of such extrinsic facts as would otherwise be necessary to show the application of the words employed to the plaintiff; but it does that merely, and does not, as we have already seen, remove the necessity of an averment, colloquium, or innuendo where they are essential to show the meaning of the words themselves. *Pike v. Van Wormer*, 5 How. Pr., 174; *S. C.*, 6 How. Pr., 100; *Van Slyke v. Carpenter*, 7 Wis., 173; 87 N. Y., 238. But extrinsic averments are not necessary where the words used, giving them their natural construction, tend to injure the reputation of the subject of them, and expose him to hatred, contempt, or ridicule. *More v. Bennett, supra; Pike v. Van Wormer*, 6 How. Pr., 100. So it was held by this court in *Langton v. Hagerty, supra*, that where there is no ambiguity in respect to the actionable quality of the language employed,

nor as to the person whom it concerns, no allegation by way of inducement or colloquium is necessary. 6 How. Pr., 100.

Such being the principles applicable to the case, we are to determine in the light of them whether the words employed in the article in question, construed in the plain and popular sense in which they would be naturally understood, tended, when taken by themselves, to subject the plaintiff to social disgrace, public distrust, hatred, ridicule, or contempt; and if not, then whether they so tended when aided by the averments, statements, and innuendoes contained in the complaint. It is alleged that the plaintiff is the widow of D. C. Bradley, who committed suicide at a time and place mentioned; that the defendants maliciously published the article set forth concerning the plaintiff in the *Evening Wisconsin.* The article purports to give the probable cause of the husband's suicide, the manner of his death, the nature and place of his employment, the capacity in which he was employed at the time, and by whom. It also states that the son was sent by the suicide's employer to Chicago, and all his expenses paid while he learned the business, and that on the lad's return he was allowed a pretty good salary. Up to this point in the article, as stated by counsel for the defendant, nothing is published of or concerning the plaintiff; but those statements serve to explain and make clear and unambiguous the balance of the article, for, in construing it, we must consider its whole scope and object and then put such construction upon its language as would naturally be given to it. Thus construed, and the words employed in stating the methods which enabled the plaintiff to pocket a part of the wages of the son seem to be capable of the meaning ascribed to them in the accompanying innuendo. Whether such meaning was truly ascribed to the words employed is for the jury and not for the court. And, so construed, we find other features of the article which of themselves, in our judgment, tend to subject the plaintiff to some of the things

which make the publication libelous upon its face, within the rules of law above stated.    But the case is here on demurrer, which, for the purposes of this appeal, admits all the allegations of the complaint to be true.    Whether they are true, or there were any mitigating circumstances attending the publication of the article, are questions for future consideration, and hence we refrain from any analysis of such other features in detail, in order that no discussion of ours may unnecessarily tend to prejudice either party upon the trial.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded for further proceedings according to law.