SHATTUC *v.* MCARTHUR and another.[1]

(*Circuit Court, E. D. Missouri.* October 1, 1885.)

1. LIBEL—STATEMENT CALCULATED TO BRING INTO CONTEMPT.

A written or printed statement calculated to expose a person to the contempt of honorable men is libelous.

2. SAME—ACCUSING GENERAL PASSENGER AGENT OF DIVIDING COMMISSIONS WITH LOCAL TICKET AGENTS.

A statement that a general passenger agent of a railroad company "has grown rich by making his local ticket agents, or some of them, divide their commissions with him," *held* to come within the rule.

3. SAME—REASONABLE GROUNDS TO BELIEVE STATEMENT TRUE.

It is no defense to a suit for libel that the defendant had reasonable grounds to believe that his statement was true, but it may be shown in mitigation of damages.

4. SAME—PROVOCATION.

Provocation may be shown in a libel suit in mitigation of damages; but it is no defense.

5. PRACTICE—UNLIQUIDATED DAMAGES—JUDGMENT OVER ANSWER.

In a suit for unliquidated damages judgment cannot be entered over an answer disclosing no defense but stating matters in mitigation.

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.
See note at end of case.

Motion for Judgment on the Answer.

*Krum & Jones* and *Garland Pollard*, for plaintiff.

*Dyer, Lee & Ellis*, for defendants.

BREWER, J., (*orally.*)   This case is for libel, and $50,000 damages are claimed.   It is insisted that the answer contains no defense, and that, therefore, plaintiff is entitled to judgment over the answer.   Technically, I think his motion cannot be sustained unless the plaintiff is willing to take simply a judgment for nominal damages, which I suggested to him, and which is not desired.   A judgment is the final determination of the rights of the parties.   If an action is on a contract where the damages are liquidated and certain, and no defense is set up in the answer, then, doubtless, such a motion would prevail, and the court would enter judgment for the amount due, as disclosed by the petition.   But where the damages are unliquidated and uncertain, then, although a good cause of action be stated in the petition, and no defense disclosed by the answer, still the damages, being unliquidated, must be assessed upon inquiry, and until they are determined no judgment can be entered.

I might stop here; but, as counsel have discussed the merits of the pleadings, perhaps it may not be improper to go further and say how they impress me.   The libel charged is this: that "Mr. Shattuc [the plaintiff] has grown rich by making his local ticket agents, [meaning the local ticket agents of the Ohio & Mississippi Railway,] or some of them, divide their commissions with him."   The petition alleges that Mr. Shattuc is the general passenger agent of such railway company.   Now, even with the explanation tendered in the answer as to the meaning and general understanding of that charge, I think it is libelous.   It may be true, as stated, that, to the general knowledge of the public, the local ticket agents are paid salaries by their employer, the railroad company, for all work done for it, and that beyond that, with the tacit approval of their employer, they are in the habit of selling tickets for other companies on commission, and that all that was meant, or understood to be meant, was that this plaintiff shared those commissions; and although such a charge is not of an unlawful act, yet it is one that it seems to me exposes the plaintiff to the contempt of honorable men, and thus comes within the definition of libel.   The suggestion is not that by some arrangement between the company (the employer) and the various ticket agents (the employes) a part of the plaintiff's compensation should be derived from the sums thus received by these sub-agents, but it is that he "has grown rich by *making* them divide their commissions."   The idea conveyed,— the natural understanding of the words,—was that the plaintiff in some way used his official position and control over those sub-agents to *compel* a division of the moneys which they had earned.   Now, I think no honorable man would approve of such conduct as that.   The man that is burdened with a charge of that kind is placed before the world exposed to the contempt of honorable men.   Take a similar instance.

We all know that in the management of Pullman sleepers the porters are permitted to receive gratuities from passengers for the little services that they render. If any local superintendent should coerce the porters to divide those little gratuities with him, should make their hiring conditioned upon their dividing those gratuities, it would not be illegal, but yet I think every honorable man would feel that it was discreditable; and so in this matter, when you charge that a general agent coerces local agents to divide sums which they have earned by their services, it seems to mé you are charging upon him that which exposes him to general contempt.

The answer, I think counsel practically concede, makes no defense to the action. While there is a general denial, yet it subsequently admits the publication. It does not justify it,—does not say that the charge is true,—but it sets up a series of matters which are merely matters in mitigation. It says that the defendant had reasonable grounds to believe that the charge was true. Concede that; that may go in mitigation of damages, but certainly that is no defense. A man may have reasonable grounds to believe that one of the judges of this court is corrupt in office. If he makes a direct charge to that effect, his belief does not make it true, or any the less a libel. It may go to the jury, and influence them in mitigating damages which should be awarded against him. So, when this charge, libelous in its nature, is made against a general passenger agent, it is no defense to the action that the party believed it to be true, and so did not act through malice. It goes only in mitigation of damages. So the fact that the plaintiff had made prior newspaper charges against the defendant is no defense. I do not understand that you can defend one tort by proving a counter-tort. You cannot defeat an action for one libel by proof that prior to that time the plaintiff himself libeled the defendant. This answer, so far as all the charges that are said to have been made by the plaintiff are concerned, is not of matters germane or kindred thereto, or in explanation or refutation of them, but is a distinct charge of an independent matter; and, while provocation may be shown in mitigation of damages, yet only in mitigation. Now, it would be idle to strike out this answer, because, although it sets up nothing but matters in mitigation of damages, yet if it was stricken out and inquiry had before a jury as though no answer were filed, these matters could be offered in evidence; and so it would be purely a work of supererogation to go through the form of striking out the answer.

The motion for judgment over the answer will be overruled.

### NOTE.

*Slander and Libel—Actionable Words.*

1. WORDS ACTIONABLE PER SE. Any article that holds a person up to scorn and ridicule, contempt, and execration, or imputes or implies the commission of a crime not openly charged, is. Crocker v. Hadley, 1 N. E. Rep. 734; Bradley v. Cramer, 18 N. W. Rep. 268. The fact that the article is in a foreign language does not prevent it being actionable *per se.* Kimm v. Steketee, 12 N. W. Rep. 177.

Words intended to expose a person to public contempt, hatred, and ridicule, and to deprive him of the benefit of public confidence and social intercourse, are actionable *per se*, Call v. Larabee, 14 N. W. Rep. 237; such as circulating hand-bills charging a person with larceny is actionable *per se*, Bowe v. Rogers, 7 N. W. Rep. 547; charging a man with being a "hog," is. Solverson v. Peterson, 25 N. W. Rep. 14. Accusing a married woman of being a prostitute, Klewin v. Bauman, 10 N. W. Rep. 398; or charging that "she is slow-poisoning her husband," Campbell v. Campbell, 11 N.W. Rep. 456; words charging commission of an indictable felony or misdemeanor, West v. Hanrahan, 10 N. W. Rep. 415; Geary v. Bennett, Id. 602. But charging one with "bearing down" when defendant's stock was weighed, and "lifting up" when plaintiff's was weighed, are not actionable unless it be also charged that plaintiff was weigh-master, or in some way interested. Wilkin v. Tharp, 8 N. W. Rep. 467. And it has been held that charging a person with having sworn falsely in a lawsuit is not. Schmidt v. Witherick, 12 N. W. Rep. 448. A publication in newspaper falsely charging one with the commission of crime, is. People v. Detroit Post & Tribune Co., 20 N. W. Rep. 528. And a publication in writing, though not charging a public offense, is nevertheless libelous if it falsely and maliciously tends to produce such an impression. Bradley v. Cramer, 18 N. W. Rep. 268. And where a railroad company, through its superintendent, assigns as a reason for the discharge of an employe a criminal act, it is actionable. Bacon v. Michigan Cent. R. Co., 21 N. W. Rep. 324.

(1) *Words Respecting Business Men and Merchants.* Words which impute to a merchant a want of credit or responsibility, or insolvency, past, present, or future, are. Newell v. How, 17 N. W. Rep. 383. Every publication in writing or in print, which charges upon or imputes to a merchant or business man insolvency or bankruptcy, or conduct which would prejudice him in his business or trade, or be injurious to his standing and credit as a merchant or business man, is. Erber v. Dun, 12 Fed. Rep. 526. An article in print, depreciating a merchant's or tradesman's wares, and charging him with counterfeiting genuine articles and their labels, is. Kimm v. Steketee, 12 N. W. Rep. 177. Where a bank cashier returned draft sent for collection with these written words, "We return unpaid draft, [describing it;] he [drawee] pays no attention to notices," in action against the cashier for libel it was held that the words do not impute to plaintiff (drawee) any want of integrity, and are not actionable *per se*. Platto v. Geilfuss, 2 N. W. Rep. 1135.

(2) *Words Regarding Professional Men.* Defamatory words spoken or written of one in his profession are actionable *per se*. Pratt v. Pioneer Press Co., 20 N. W. Rep. 87.

(a) *Regarding Lawyers.* Charging an attorney with "betraying and selling innocence in a court of justice," is. Ludwig v. Cramer, 10 N. W. Rep. 81.

(b) *Regarding Physicians.* Where the words employed in a publication in a newspaper, in stating the conduct of a physician in a particular case, only impute to him such ignorance or want of skill as is compatible with the ordinary or general knowledge and skill in the same profession, they are not actionable *per se;* but where they are such as fairly impute to him gross ignorance and unskillfulness in such matters as men of ordinary knowledge and skill in the profession should know and do, then they necessarily tend to bring such physician into public hatred, ridicule, or professional disrepute, and are actionable *per se*. Ganvreau v. Superior Publishing Co., 22 N. W. Rep. 726. Publishing in a newspaper, in the "want" column, the words, "Wanted, E. B. Zier, M. D., to pay a drug-bill," are not actionable *per se*, Zier v. Hoflin, 21 N. W. Rep. 862; but may become so from the circumstances under which they are published. Woodling v. Knickerbocker, 17 N. W. Rep. 387; Zier v. Hoflin, 21 N. W. Rep. 862.

(c) *Regarding Newspaper Men.* Falsely charging an editor with being drunk may be. State v. Mayberry, 6 Pac. Rep. 553. Charging a newspaper publisher with being a party to a secret conclave, in which he, the publisher, sold the support and advocacy of his said newspaper to a certain corporation for a large sum of money, is actionable *per se*. Fitch v. De Young, 5 Pac. Rep. 364.

(3) *Words Respecting Public Officers and Candidates for Public Offices.* A charge of embezzlement, made in good faith against a treasurer of city or county, who is a candidate for re-election, is not actionable *per se*. Marks v. Baker, 9 N. W. Rep. 678. A publication which charges that a person, while formerly holding the office of sealer of weights and measures, and inspector of scales, for a certain city, "tampered with" or "doctored" such weights, measures, and scales for the purpose of increasing the fees of his office, is actionable *per se*. Eviston v. Cramer, 3 N. W. Rep. 392.

(4) *Words Spoken or Written by Mercantile Agencies.* A statement made in good faith by a mercantile agency to one of its subscribers, interested in the information, respecting the responsibility and business standing of a merchant, is not actionable *per se*. Erber v. Dun, 12 Fed. Rep. 526; Trussell v. Scarlett, 18 Fed. Rep. 214. But statements made respecting the business or character of a merchant in the "daily notification sheets" sent out to the subscribers of a mercantile agency, irrespective of their interest therein, are. Erber v. Dun, 12 Fed. Rep. 526.

(5) *Malice, Hatred, Ill-Will, etc.* Willful publication of injurious statements involves the design to produce whatever injury must necessarily follow, and when done purposely, knowingly, and for no good purpose, is not justifiable, and it is malicious in the sight of the law, even if done without any personal ill-will, and actionable. Maclean v. Scripps, 17 N. W. Rep. 815; Maclean v. Scripps, 18 N. W. Rep. 209. A false and injurious publication in a public journal "for sensation and increase of circulation" is, in a legal sense, malicious. Maclean v. Scripps, 18 N. W. Rep. 209. A communication otherwise privileged, if made with malice in fact, or through hatred, ill-will, and a malicious design to injure, is not privileged, and is actionable. Erber v. Dun, 12 Fed. Rep. 526. Where a person prints and circulates a statement which imputes to a merchant or other business man conduct which is injurious to his character and standing as a merchant or business man, it is a libel, and implies malice. Locke v. Bradstreet Co., 22 Fed. Rep. 771.

(6) *Construction.* In determining whether words are actionable *per se* they are to be taken in the sense in which they would naturally be understood by those who heard or read them. Campbell v. Campbell, 11 N. W. Rep. 456; Bradley v. Cramer, 18 N. W. Rep. 268. Innuendo cannot enlarge the meaning of words in publication, but merely point out their application of facts previously alleged. Bradley v. Cramer, 18 N. W. Rep. 268.

2. PRIVILEGED COMMUNICATIONS. The rule is that a communication made in good faith, upon any subject-matter in which the person communicating has an interest, or in reference to which he has a duty, public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty, is privileged. Marks v. Baker, 9 N. W. Rep. 678. A communication is privileged, within the rule, when made in good faith in answer to one having an interest in the information sought; and it will be privileged, if volunteered, when the party to whom it is made has an interest in it, and such party stands in such relation to him as to make it a reasonable duty, or at least proper, that he should give the information. Crane v. Waters, 10 Fed. Rep. 619; Erber v. Dun, 12 Fed. Rep. 526; Locke v. Bradstreet Co., 22 Fed. Rep. 771. Where the subject-matter of the communication is one of public interest in the community of which the parties to the suit are members, it is sufficient to make the communication privileged. Marks v. Baker, 9 N. W. Rep. 678.

Written information as to the standing of a merchant or business man, furnished by a mercantile agency to its subscribers voluntarily, or in answer to inquiries from them, is a privileged communication. Locke v. Bradstreet Co., 22 Fed. Rep. 771. A corporation carrying on the business of a mercantile agency is not exempt from legal responsibility, and is subject to the same rules of law as other persons who have a just occasion for making statements which are charged to be libelous. Locke v. Bradstreet Co., 22 Fed. Rep. 771. Where, in publishing an article which tends to injure a merchant or business man, as such, the author or publisher acted in the *bona fide* discharge of a public or private duty, legal or moral, or in the prosecution of his own rights and interests, that which is communicated in writing, under such circumstances, is a privileged communication, unless actuated by malice. Locke v. Bradstreet Co., 22 Fed. Rep. 771. False charges, made with improper motives or express malice, are never privileged. Eviston v. Cramer, 3 N. W. Rep. 392; Weiman v. Mabie, 8 N. W. Rep. 71; Locke v. Bradstreet Co., 22 Fed. Rep. 771.

Statements made to a prosecuting attorney, whose office and duty is to present and prosecute all crimes and offenses, are privileged. Vogel v. Gruaz, 4 Sup. Ct. Rep. 12. So, also, those made in affidavits to pleadings and papers used in a court of justice are privileged, provided they are not irrelevant and impertinent. Hart v. Baxter, 10 N. W. Rep. 198. And the statements contained in an affidavit presented to a superintendent of schools for the purpose of preventing a teacher's license being granted to a particular person, charging such person with improper conduct, are privileged. Weiman v. Mabie, 8 N. W. Rep. 71.

Public writers and speakers may discuss men and measures in speaking of matters of public interest, provided only they do so in good faith. Crane v. Waters, 10 Fed. Rep. 619. Publication and circulation of an article, although not true, in good faith, among voters, to inform them of the character of a candidate for a public office, and enable them to vote more intelligently, is privileged. State v. Balch, 2 Pac. Rep. 609.

Whether an alleged libel is within the protection afforded to a privileged communication is a question of law. Locke v. Bradstreet Co., 22 Fed. Rep. 771. It is for the jury to determine whether a privileged communication is defamatory and actuated by malice. Id.