## T. J. McKEE *v.* WM. HUGHES *et al.*

### (*Nashville.* December Term, 1915.)

1.  **TORTS.** Resort to legal proceedings. Petition to revoke merchant's license.

Where a number of residents of a town petitioned the mayor and board of aldermen to revoke the defendant's license as a general merchant on the ground that his store was a public nuisance, pursuant to which the board illegally revoked the license, but the petition was signed and presented without malice and in the honest belief that the board had power to act, defendants were not liable for plaintiff's loss occasioned by the revocation, since their action was a lawful exercise of the right to apply by address to government authorities for the redress of grievances secured by Const. art. 1, sec. 23. (*Post, p* 458.)

2. **CONSPIRACY.** Merchant's license. Petition to revoke. "Civil conspiracy."

Defendants' motive being the public good, and they being not actuated by malice or intent to injure plaintiff, their action in signing and presenting such petition was not a conspiracy, since a "civil conspiracy" is a combination between two or more persons to accomplish by concert of action an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means; the damage being the gist of any action (citing Words and Phrases, Second Series, Civil Conspiracy). (*Post, pp.* 459-462.)

Cases cited and construed: Louisiana Citizen's Bank v. Orleans Parish Board (C. C.), 54 Fed., 73; Vanarsdale v. Laverty, 69 Pa., 103.

Constitution cited and construed: Art. 1, sec. 23.

3.  **LIBEL AND SLANDER.** Privilege. Legal proceedings.

Such petitions are privileged only in the absence of malice on the part of the petitioners. (*Post, pp.* 462, 463.)

McKee v. Hughes.

Cases cited and approved: White v. Nicholls, 3 How., 266; Kent v. Bongartz, 15 R. I., 72; Wieman v. Mabee, 45 Mich., 484; Dennehy v. O'Connell, 66 Conn. 175.

4. **CONSPIRACY.** Merchant's license.   Petition to revoke. Malice.  Presumption.

In addressing such a petition to the municipal authorities, the petitioners are presumed to act without malice; the burden being on the party complaining to show the contrary.  (*Post, p.* 463.)

Cases cited and approved: Ambrosius v. O'Farrell, 119 Ill. App., 265; Van Wyck v. Aspinwall, 17 N. Y., 190.

5. **EVIDENCE.** Presumption.  Knowledge of law.

The presumption of knowledge of the law cannot be made the basis of imputed bad faith on defendants' part in presenting such petition to the board for the abatement of a condition not a nuisance *per se* which could be legally abated only by judicial proceedings.  (*Post, pp.* 463-465.)

Cases cited and distinguished: Harrison v. Bush, 5 Ellis & Blackb., 344; Fairman v. Ives, 5 B. & Ald., 642.

---

FROM MAURY.

---

Appeal from the Circuit Court of Maury County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court—W. B. TURNER, Judge.

J. L. JONES, J. C. VOORHIES and R. S. HOPKINS, for plaintiff.

HOLDING & GARNER and J. H. DENNING, for defendants.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

McKee brought this suit against a large number of the residents of the village of Spring Hill, Maury county, to recover damages, his declaration containing several counts, all of which, save the fourth, have been eliminated by the verdict of the jury and the rulings of the court of civil appeals.   In this fourth count it was averred that Spring Hill is incorporated, and has a board of mayor and aldermen, from which plaintiff had procured a license to do the business of a general merchant; that under this license he conducted a store for the sale of merchandise and had a prosperous business, when the defendants unlawfully conspired together to stop and destroy his business, and for that purpose signed and delivered to the board of mayor and aldermen the following petition addressed to that body:

"We, the undersigned citizens, do hereby petition your honorable body to declare the store conducted by T. J. McKee a public nuisance, and we further petition you to abate this nuisance by revoking his license and closing up his place of business.

"This 27th day of August, 1913."

This paper was signed by nineteen of the defendants.

It was further averred that the said board passed a resolution reciting that "numerous complaints have been made that T. J. McKee has been and is conducting a place of business which is a nuisance, and whereas a formal petition has been presented to us numerously

signed by citizens, be it resolved that we hereby revoke the license issued to T. J. McKee,'' and that the marshal of the town be authorized to deliver to McKee a check rebating him a part of the license sum prepaid, ''and to notify him that he can no longer conduct his place of business under penalty of the city laws.''

It is averred also that by reason of the above, plaintiff's business was stopped and destroyed, to his damage, etc.

The trial judge instructed the jury that the defendants had a right under the law to petition the village council for redress of grievances, and that they were not bound to see that the details of that council's action with reference to their petition were absolutely legal. Further that there was no liability shown under the fourth count.

The court of civil appeals reversed the judgment of the circuit court because of the above ruling; and we are asked to grant the writ of *certiorari* and to review the judgment of reversal.

We have no difficulty in following the court of civil appeals to its conclusion that the action of the village council in undertaking to revoke the license and in notifying McKee that he could no longer conduct his business was unwarranted by law; but we are unable to follow that court in the ruling that the defendant petitioners must respond in damages on the ground that in presenting said petition they conspired to and did cause injury to plaintiff unlawfully.

There was proof adduced by plaintiff that tended to show that he had been injured by the action taken by the city marshal under the resolution of the council. But are defendants liable as conspirators?

A "civil conspiracy" may be defined to be a combination between two or more persons to accomplish by concert of action an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means; the damage caused being the gist of any action. 5 R. C. L., 1061, 1091; 1 Words and Phrases, Second Series, 910.

The defendants in assembling and petitioning the village council, were proceeding in the exercise of a high constitutional privilege. By the Declaration of Rights embodied in our Constitution (article 1, sec. 23) it is provided:

"That the citizens have a right, in a peaceable manner, to assemble together for the common good, to instruct their representatives, and to apply to those invested with the powers of government for redress of grievances, or other proper purposes, by address or remonstrance."

In 8 Cyc., 894, citing *Louisiana Citizens' Bank v. Orleans Parish Board* (C. C.), 54 Fed., 73, the rule is stated to be:

"The right of assembly and petition is guaranteed by the Constitutions, which secure to every person, natural or artificial, the right to apply to any department of the government for the redress of grievances, or the bestowal of a right, and also guarantee the enjoy-

ment of such redress of the grievances,  .  .  .  when obtained, free from any penalty for having sought or obtained it.''

We think that this with modification to be noted below, is a correct statement of the law.

We have been cited to but a single case in which a court has dealt with liability for conspiracy predicated upon the defendants signing a petition to those invested with governmental power for redress of grievances or setting forth instructions by way of an expression of their wish or will.

The court of civil appeals grounded its ruling upon the authority of that case, *Vanarsdale v. Laverty,* 69 Pa., 103, 109.

The petition in that case was addressed to the district school directors by defendants, who were patrons of the school which had been taught by Laverty.   The petition expressed their wish that Laverty be not employed for the ensuing school term under any circumstances and the willingness of the petitioners to accept any other competent teacher that the board might select. The action of Laverty was on the case for conspiracy, and malice was charged to have colored the effort made by defendants to prevent the directors from employing plaintiff.   Referring to the petition, the court said:

''It preferred no charges and gave no reasons, and was a simple expression  .  .  .  of the wishes of the signers.   It was the right of these citizens of the district thus to declare their desire.   They had a right to express a preference or to declare their objection to

any one applying for appointment.   They were deeply interested, and had therefore a right to speak out.  But we cannot recognize the position to which the argument of the plaintiffs in error leads, that such a right of expression can be made a channel through which men may gratify their malice and enmity.   This would be the actual result of the argument that the right of petition is so sacred that the private purposes and motives of the actors cannot be inquired into.   If they cannot, and if the real purpose of the petition be the gratification of ill will and malice without cause, then men may be borne down by the power of their enemies, especially in numbers and by combination.   .   .   .   A groundless petition instigated only by malice cannot surely be the right of any citizen where it   .   .   .   results in harm to the object of its malicious purpose.''

The court, moreover, approved a charge given by the trial judge to the effect that, if defendants acted honestly and were influenced by proper motives, the plaintiff could not recover.

We ourselves think that a true doctrine was enunciated by the Pennsylvania court in that case; but it fails of proper application in the case before us because here there was no malice and no intention to injure plaintiff.   The purpose of defendants as manifested by the only proof adduced was to serve what was deemed to be the legitimate interests of the village—not a selfish one springing out of trade rivalry, jealousy, or revenge.

The village of Spring Hill is the location of a large boys' training school; defendant Hughes being one of the principals of the school and mayor of the town. The proof demonstrates that the plaintiff's store was, what one of his own witnesses termed it, a rough house, frequented, as it was, by numbers of drinking and boisterous men, colored and white, and boys at times were seen in the store full of drink. The store appears to have been the rendezvous of plaintiff and a woman, in daytime and at night. Vile communications between the two passed through the local telephone exchange. The woman resorted to the store, and was seen there more than once with plaintiff about midnight, the door being locked. Cursing in loud tones often was heard by the passers-by. Plaintiff himself was often in drink at the store, and was loudly profane. The citizens of the village naturally were desirous of eliminating this condition, and in a public meeting after discussion petition to their village council was resorted to as a peaceable means of relief.

The same principle announced in the Pennsylvania case underlies those cases which involve the exercise of the right of petition where a suit for libel was based upon the contents of the instrument by the person affected thereby.

A number of courts hold that such petitions and all matters embraced therein, if pertinent and relevant, are absolutely privileged. But by the weight of authority they are only qualifiedly privileged; the privilege extending no further than the protection of the signers

when they act without malice. Even if the complaint embodied in the petition be untrue, no action can be maintained if it was not maliciously made. *White* v. *Nicholls,* 3 How., 226, 11 L. Ed. 591; *Kent* v. *Bongartz,* 15 R. I., 72, 22 Atl., 1023, 2 Am. St. Rep., 870; *Weiman* v. *Mabee,* 45 Mich., 484, 8 N. W. 71, 40 Am. Rep., 477. But proof of actual malice in respect of such a petition will render it libelous in character, and therefore, of course, an action would lie. *White* v. *Nicholls,* supra; *Dennehy* v. *O'Connell,* 66 Conn., 175, 33 Atl., 920, and cases cited above.

Such a petition is presumed not to be the product of the malice of its signers; they ought, in the exercise of such a constitutional privilege, to be presumed to act in the discharge of a social or public duty. The burden of proof to show malice was therefore on the plaintiff, McKee. *White* v. *Nicholls,* supra; *Ambrosius* v. *O'Farrell,* 119 Ill. App., 265; *Van Wyck* v. *Aspinwall,* 17 N. Y., 190. And, as seen, there was no evidence of malice that could have supported a verdict of the jury; and the trial judge was not in error in giving the instruction he did touching the fourth count of the declaration.

It may be that the petitioners misconceived the power of the council under the charter of the village, which granted the council authority to issue privilege licenses, to declare, prevent, or abate nuisances, and to prohibit or suppress disorderly houses of all kinds; further, that under such misconception they petitioned for an abatement of McKee's store as a public nuisance "by revoking his license and closing up his place of

business.'' But malice or bad faith are not to be imputed to the petitioners because they could not discriminate between the power of summary abatement of a nuisance *per* se and the abatement of a condition such as that shown to have been in existence at McKee's store by a judicial proceeding. Can it be that ordinary laymen, in the exercise of such a right, may be thus caught on such a fine point of law, to their undoing, as is insisted in this case? The juster view is that these men but advanced the above mode of action as a suggestion for the consideration of the members of the council, deemed by them competent to judge and act as public officials, and that they are not liable if they acted in good faith or without malice. The right of petition guaranteed to the citizen in the bill of rights should not be allowed to become a trap for the petitioner to be sprung by any such hairtrigger of technical law.

In *Harrison* v. *Bush,* 5 Ellis & Blackb., 344, 119 Eng. Rep., 509, there was involved a memorial signed by defendant along with a large number of the inhabitants of his borough, complaining of the conduct of plaintiff as a justice of the peace, and the court was of opinion no action would lie for libel if the memorialist thought he was addressing an authority who might reasonably be, and was, supposed by him to have the duty and power to act in the premises. Lord Chief Justice Campbell, delivering the opinion, referred to an earlier case of *Fairman* v. *Ives,* 5 B. & Ald., 642, and to the opinion of Mr. Justice Holroyd therein, and said:

McKee v. Hughes.

"Mr. Justice Holroyd considered that it was enough if the petition had been presented *bona fide,* 'for the purpose of obtaining redress,' without considering whether the functionary to whom it was presented had the power to grant redress; and he recognized the case of *Cleaver* v. *Sarrande,* which carries considerably further the doctrine of the occasion repelling the presumption of malice.   The language of Best, J., in *Fairman* v. *Ives,* 5 B. & Ald., 642, is particularly applicable to the present case: 'The circumstances under which this letter was sent rendered it a privileged communication.   It was an application for the redress of a grievance, made to one of the King's ministers, who, as the defendant honestly thought, had authority to afford him redress.   And this may be done without hazard of an action or prosecution, if the application be made *bona fide* with a view to obtain redress for some injury received, or to prevent or punish some public abuse.' "

Satisfied, as we are, that the trial judge properly ruled this case, the writ of *certiorari* is granted, and the judgment of the Court of Civil Appeals is reversed. Judgment here in accord.