## CAMPBELL vs. CAMPBELL.

*December 14, 1881 — January 10, 1882.*

SLANDER. (1) *In what sense words to be taken.* (2) *Case stated; nonsuit improperly granted.* (3) *Proof of the person to whom the words referred.* (4) *Plaintiff's character as affecting damages.*

1. In slander, in determining whether words are actionable *per se*, they are to be taken in the sense in which they would naturally be understood by those who heard them.

2. The words, "she is slow poisoning her husband," are capable of being understood as charging the giving of poison with intent to kill; and where that meaning is attributed to them by proper innuendoes, and there is sufficient evidence to support a finding that they were so intended, a nonsuit should be denied.

3. The plaintiff was allowed to testify that she understood the words complained of as referring to her. She also testified to facts showing clearly that such was the reference of the words. *Held,* that the admission of the evidence was not ground of reversal.

4. The court charged the jury to consider "all the evidence on both sides touching the moral character of the plaintiff," but did not definitely state what effect, if any, such character should have in determining the amount of damages; and it refused to charge that in actions for slander "a person of bad character is not entitled to the same measure of damages as one of good character;" and that if plaintiff's "general character" was bad, that fact must be considered in determining the damages. *Held,* that such refusal was error.

Campbell vs. Campbell.

APPEAL from the Circuit Court for Outagamie County.

This is an action for damages for speaking of and concerning the plaintiff the words "She is slow poisoning her husband," thereby meaning that she was feloniously and maliciously administering poison to her husband, a brother of the defendant, and then very sick, with the intent to kill and murder him. There was a verdict and judgment for the plaintiff; and defendant appealed from the judgment.

For the appellant there was a brief by *Barnes & Goodland,* and oral argument by *Mr. Goodland:*

1. The court erred in admitting the evidence of the plaintiff as to who was referred to in the conversation testified to by her. Townshend on S. and L., p. 148, note 2, and p. 652 and cases cited in note; 2 Starkie on Slander, 32; *Ryckman v. Delavan,* 25 Wend., 186; *Gibson v. Williams,* 4 id., 320; *Van Vechten v. Hopkins,* 5 Johns., 211; *Mix v. Woodward,* 12 Conn., 263; *Snell v. Snow,* 13 Met., 278; *State v. Jeandall,* 5 Harr. (Del.), 475; 32 Pa. St., 273; *Rangler v. Hummel,* 37 Pa. St., 130; *McCue v. Ferguson,* 73 id., 333; *Briggs v. Byrd,* 11 Ired. Law, 353; *McLaughlin v. Bascom,* 38 Iowa, 660. There are cases which hold that the judgment of witnesses acquainted with the parties and circumstances, as to the defendant's intention and application of the words, may be admitted in evidence for the information of the jury; but the weight of authority is against such a rule. And even if that should be held to be the correct rule, it should be limited to witnesses who are presumed to be impartial, and not be extended to include the parties, who are generally so affected by passion and prejudice that an opinion from them would only tend to mislead. 2. Defendant's motion for a nonsuit should have been granted. Standing alone, the words charged were not in themselves slanderous. They were capable of a meaning entirely different from that claimed in the complaint; and there was nothing in the evidence to show that they were used with the intent and meaning charged. Admitting that the

plaintiff was the person alluded to, they might have been used to convey the idea that she was pursuing a mistaken course of treatment with her husband, in regard to diet, medicine or drink, without imputing any malicious or felonious intent. If the *act* charged does not itself constitute an offense, or may be an offense or not according to circumstances, the circumstances required to make it such must have been included in the statement made, or the words are not actionable *per se.* Or they must be used in relation to such a condition of things as to make it plain that they were intended to charge a crime, or they are not actionable at all. Thus the words, " He has set his hop-house on fire and burned it up," do not *per se* impute a felonious burning. *Frank v. Dunning,* 38 Wis., 270. To say of another " You swore falsely in a suit " is not actionable *per se,* because the words standing alone do not impute the crime of perjury. *Vliet v. Rowe,* 1 Pin., 413; *Weil v. Altenhofen,* 26 Wis., 708; *Weil v. Schmidt,* 28 id., 137. 3. The court erred in limiting the jury to the consideration of the " *moral* character " of the plaintiff in fixing the amount of damages. Probably nine persons out of ten, including many very intelligent persons, would understand the phrase " moral character," as applied to a woman, to mean her character for chastity; and such was no doubt the meaning attributed to it by the jury in this case. 4. The instruction asked by the defendant, that, in an action of this kind, a person of bad character is not entitled to the same measure of damages as one of good character, etc., was correct (———— *v. Moor,* 1 M. & S., 284; *Haskins v. Lumsden,* 10 Wis., 359; *B. v. I.,* 22 id., 372; *Wilson v. Noonan,* 27 id., 598; *Maxwell v. Kennedy,* 50 id., 645), and was not covered by the general charge. The defendant had a right to require a pointed, explicit and positive instruction upon the question. *Livingston v. Ins. Co.,* 7 Cranch, 506; *Etting v. Bank of U. S.,* 11 Wheat., 59; *Taylor v. Hillyer,* 3 Blackf., 433; *Plummer v. Gheen,* 3 Hawks, 66; . *Washburn v. Tracy,* 2 D. Chip., 128; *Fletcher v. Howard,* 2

Aik., 115; *Zabriskie v. Smith*, 13 N. Y., 322; *Rogers v. Brightman*, 10 Wis., 55; *Roberts v. McGrath*, 38 id., 52; *Wheeler v. Konst*, 46 id., 398; *Tupper v. Huson*, id., 646; *Conners v. State*, 47 id., 523; *Lela v. Domaske*, 48 id., 623.

For the respondent there was a brief by *W. J. Allen* and *Kennedy & Hammel*, and oral argument by *Mr. Allen* and *Mr. Hammel:*

1. If the plaintiff had not testified that she understood the words uttered by defendant in her hearing as applied to her, the jury must necessarily have inferred that such was their application, from all the testimony. No harm, therefore, resulted to the defendant from the admission of this part of plaintiff's testimony, even if it was improper. 2. The nonsuit was properly denied. The words charged were actionable *per se*, even without the aid of innuendoes. They cannot be understood otherwise than as imputing a criminal offense. Townshend on S. & L., 238, § 128, and 253, § 170. The words must be taken according to their natural and proper import, and in the same sense in which any reasonable bystander would apply them. 5 Wait's Act. & Def., 749, § 5, and cases there cited; *Montgomery v. Deeley*, 3 Wis., 709; *Weil v. Schmidt*, 28 id., 137; *Hayes v. Ball*, 72 N. Y., 418. Where the words are capable of two constructions, and there are proper innuendoes pointing out the injurious meaning, the question whether they were used in that sense is for the jury. Townshend on S. & L., §§ 142, 281, 338; *Hayes v. Ball, supra; Frank v. Dunning*, 38 Wis., and cases there cited. 3. There was no error in instructing the jury to consider plaintiff's "moral character" in determining damages. "Moral character" is a more comprehensive phrase than "general good character." See the word "moral" in Richardson's dictionary. 4. The instruction asked by defendant on this point was substantially covered by the general charge, and was therefore properly refused. Thompson on Charging the Jury, § 92, and cases there cited; *Osen v. Sherman*, 27 Wis., 501; *Karasich v. Hasbrouck*, 28

id., 569; *Urbanek v. Railway Co.*, 47 id., 59.   5. The whole record shows that the verdict in respect to damages was inadequate rather than excessive; and for that reason the defendant is not entitled to a new trial.   Thompson on Charging the Jury, 158, 161, 162; *Appleton v. Barrett*, 29 Wis., 221; *Cronin v. Delavan*, 50 id., 375.

CASSODAY, J.   It is urged that the words spoken were not slanderous *per se;* that their meaning could not be enlarged by innuendoes; and that, as there was no proof of special damage, the verdict must be set aside as against evidence.

It was held by Lord HOLT, C. J., that the court "would give no favor to words, and would give satisfaction to them whose reputation is hurt; and would take words in a common sense according to the vulgar intendment of the bystanders. The rule *de mitiori sensu* is to be understood, where the words in their natural import are doubtful, and equally to be understood in the one sense as in the other."   *Somers v. House,* Holt, 39.

In a much later case, the same court, per Lord ELLENBOROUGH, C. J., said: "Words are now construed by courts, as they always ought to have been, in the plain and popular sense in which the rest of the world naturally understood them." *Roberts v. Camden,* 9 East, 95.   So in *Hankinson v. Bilby,* 16 M. & W., 443, PARKE, B., giving the true test, said: "First ascertain the meaning of the words themselves, and then give them the effect any reasonable bystander would affix to them."

In *Peake v. Oldham,* 1 Cowper, 275, affirming the same case in error from the common pleas, Lord MANSFIELD, C. J., held the speaking of the words, "I am thoroughly convinced that you are guilty, and rather than you should go without a hangman I will hang you," with innuendoes, sufficient to sustain a verdict for the plaintiff.   In that case it was said by the court at common pleas that "it [the innuendo] is not, there-

fore, contradictory, but explanatory; not introductory of new matter, but ascertaining the meaning of the old, and limiting the general word 'death' to one particular species of it, 'murder.' The innuendo is therefore sufficiently regular; whether it was true or not that such was the defendant's meaning, was a fact for the jury to decide upon." 2 W. Bl., 961. In giving the opinion the chief justice refers to and follows the old case of *Ward v. Reynolds*, where the gist of what the defendant said to the plaintiff was, "He [your husband] died of a wound you gave him;" and it was held that the jury were justified in finding "that the defendant meant a charge of murder." The chief justice then, referring to the case before him, added: "So, here, if shown to be innocently spoken, the jury might have found a verdict for the defendant; but they have put a contrary construction upon the words as laid," and therefore the judgment was affirmed. 1 Cowper, 278. That ruling was subsequently sanctioned in *Roberts v. Camden, supra.*

In *Blagg v. Sturt*, 10 Ad. & Ell. (N. S.), 899, it was "held by the court of exchequer chamber, affirming the judgment of the Queen's Bench, that it is for the judge to decide whether a publication is capable of the meaning ascribed to it by an innuendo, and for the jury to decide whether such meaning is truly ascribed to it." See also *Strader v. Snyder*, 67 Ill., 406; *Goodrich v. Davis*, 11 Met., 473; *Montgomery v. Deeley*, 3 Wis., 709; *Weil v. Schmidt*, 28 Wis., 137.

This case seems to be clearly distinguishable from *Frank v. Dunning*, 38 Wis., 270; *Weil v. Altenhofen*, 26 Wis., 708; *Vliet v. Rowe*, 1 Pin., 413; *Bloss v. Tobey*, 2 Pick., 320; *Carter v. Andrews*, 16 Pick., 1; *Snell v. Snow*, 13 Met., 278. It is more analogous to *Weil v. Schmidt*, 28 Wis., 137; *Cottrill v. Cramer*, 43 Wis., 242; and particularly *Ward v. Reynolds* and *Peake v. Oldham, supra; Geary v. Bennett*, 53 Wis., 444. In the case last cited, the slanderous words spoken were: "There is a foreign substance in your milk, similar to water,

and it is watered;" and they were held, on demurrer, in view of our statute, actionable *per se*.

Here the defendant charged the plaintiff during the last sickness of her husband, and when she was his sole nurse, with "slow poisoning her husband." Under our statute, the administering of poison in food, drink or medicine, with the intent to kill or injure a human being, is a crime punishable by confinement in the state prison. Sections 4384, 4374, 4337, R. S. Here the evidence tends to prove that the defendant, on being asked the condition of his brother, replied: "She is slow poisoning him, the termagan;" or, "That termagan is slow poisoning him;" or, "He is failing, and she, I think, is dosing him with slow poison." Then, on being asked why he did not "see into it," or "look about it," he answered: "Wait till he is dead; my brother in Oshkosh will skin her alive, and I will see her in prison;" or, "Wait; if he dies, my brother in Oshkosh will skin her alive, and I will have her in prison — in state's prison." The objection that the plaintiff was allowed to testify that she supposed the defendant referred to her when he used the word "termagan," would seem not to be well taken, especially as she testified in another connection that in the conversation "my name was mentioned," "the conversation referred to my husband and, myself," and all the evidence tended to show it could not refer to any one else. Opinions of witnesses as to the person to whom pronouns and ambiguous words applied, have, however, been allowed by the courts. *Miller v. Butler*, 6 Cush., 72; *Leonard v. Allen*, 11 Cush., 241; 2 Greenl. Ev., § 417. It seems, however, that before a witness will be allowed to give his opinion that words were used in some other than their ordinary sense, the foundation must first be laid by proving facts giving a peculiar character to the expressions used. *Daines v. Hartley*, 3 Exch., 200. But here the error, if any, was cured by the nature of the evidence given.

Within the rule laid down by the exchequer chamber, with

the sanction of Lord DENMAN, C. J., above quoted, and which we approve, it would seem that the trial court here could not do otherwise than hold that the words spoken were capable of the meaning ascribed to them by the innuendoes, and that the jury were justified by the evidence in holding that such meaning was truly ascribed to them. This being so, the nonsuit was properly denied. If it be conceded that we are correct in this, it will hardly be contended that the damages awarded were excessive.

Was there any error in charging or refusing to charge the jury? The court charged the jury to consider, among other things, "all the evidence on both sides touching the *moral* character of the plaintiff," but was silent, or at least left it somewhat vague or indefinite, as to what effect, if any, good or bad character should have in determining the amount of damages to be awarded. Accordingly, the counsel for the defendant requested the court to charge, in effect, that "in actions of this kind a person of bad character was not entitled to the same measure of damages as one of good character;" and if they found for the plaintiff, and also found that her "general character" was bad, "such bad character must be considered by" them in fixing the amount of damages, and that they were at liberty to find a verdict for the plaintiff for nominal damages only. The court did tell the jury that they had "the right to give nominal damages," but nowhere gave the substance of what was contained in the other portion of the instructions so requested. In actions of slander, it is well settled that the plaintiff's general character is involved in the issue; and evidence showing what it is, and consequently its true value, may be offered on either side to affect the amount of damages. 2 Greenl. Ev., § 275; *Earl of Leicester v. Walter*, 2 Campb., N. P., 251; *Larned v. Buffinton*, 3 Mass., 546; *Stone v. Varney*, 7 Met., 86; *Burnett v. Simpkins*, 24 Ill., 264. The rule thus stated has frequently received the sanction of this court. *Maxwell v. Kennedy*, 50

Wis., 645; *Wilson v. Noonan*, 27 Wis., 599; *B——— v. I———*, 22 Wis., 372; *Haskins v. Lumsden*, 10 Wis., 359. Whether plaintiff, in the first instance and before his character has been assailed, can give evidence of his own good character, it is not necessary here to decide. The question of character, therefore, being involved, and under the evidence made material for the jury to consider, was it error to refrain entirely from instructing the jury as to the effect of such evidence upon the amount of damages to be awarded? The decisions of this court lead to the conclusion that a party has a right to a direct and positive instruction upon a point material to the issue and the evidence, if requested in time; and if such request is refused, and the point involved therein is not covered by the general charge, or is left vague or indefinite, the judgment will be reversed. *Rogers v. Brightman*, 10 Wis., 55; *Roberts v. McGrath*, 38 Wis., 52; *Wheeler v. Konst*, 46 Wis., 398; *Tupper v. Huson*, id., 647; *Conners v. State*, 47 Wis., 523. Similar rules have been adopted by other courts. *Livingston v. Ins. Co.*, 7 Cranch, 544; *Taylor v. Hillyer*, 3 Blackf., 433; *Washburn v. Tracy*, 2 D. Chip., 128; *Fletcher v. Howard*, 2 Aikens, 115; *Plummer v. Gheen*, 3 Hawks, 66; *Zabriskie v. Smith*, 13 N. Y., 322.

Because the court did not conform to this well established rule in the particular mentioned, the judgment of the circuit court must be reversed, and the cause remanded for a new trial.

*By the Court.*— So ordered.