STAROBIN, Appellant, v. NORTHRIDGE LAKES DEVELOP-
MENT COMPANY, and others, Respondents.

Supreme Court

*No. 77–190. Submitted on briefs January 9, 1980.—
Decided February 7, 1980.*
(Also reported in 287 N.W.2d 747.)

1

For the appellant the cause was submitted on the brief of *Gary M. Luck*, *Joel Rosenthal* and *Luck & Rosenthal, S.C.*, of Milwaukee.

For the respondents the cause was submitted on the brief of *James G. Doyle, James A. Baxter* and *Schellinger & Doyle, S.C.,* and *Herz, Levin, Chernof & Sumner, S.C.,* of counsel, all of Milwaukee.

SHIRLEY S. ABRAHAMSON, J.   This appeal is from an order granting defendants' motion to dismiss four claims of a complaint for libel and slander on the ground that each of the claims failed to state a claim upon which relief can be granted.[1]   There are two issues presented on appeal: are the defendants' alleged communications capable of a defamatory meaning; and is the claim for slander insufficient because there is no allegation of special damages.   We conclude that the complaint states claims for libel and slander, and we reverse the order of the circuit court.

## I.

Because this is an appeal from an order granting a motion to dismiss the complaint, the only facts of record are those in the complaint.

On March 3, 1977, Mark Starobin, the plaintiff, filed a complaint which denominated seven claims against the defendants: (1) conspiracy; (2) libel; (3) libel; (4) slander; (5) libel; (6) tortious breach of contract; and

---

[1] Sec. 802.06(2), Stats., provides:

"Every defense, in law or fact, except the defense of improper venue, to a claim for relief in any pleading, . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (f) failure to state a claim upon which relief can be granted, . . . A motion making any of these defenses shall be made before pleading if a further pleading is permitted. . . ."

Under sec. 817.33(3) (e), Stats. 1975, a circuit court's order overruling a motion to dismiss under sec. 802.06(2) is an appealable order.

(7) fraudulent misrepresentation. The defendants moved to dismiss the first six claims on the grounds that each failed to state a claim upon which relief can be granted. The circuit court granted defendants' motion to dismiss and granted plaintiff leave to amend the first and sixth claims only. Plaintiff appealed to this court from that part of the order dismissing the second through fifth claims without granting plaintiff leave to amend.

The following allegations in the complaint are applicable to the claims of the complaint in issue here: Plaintiff claims to be a member of the Northridge Club because he purchased a condominium at Northridge Lakes. The defendants are the Northridge Lakes Development Company (Development Company), Wisconsin Condominium Sales, Inc., and partners and employees of the Development Company and of Wisconsin Condominium Sales, Inc.

Plaintiff, a real estate broker, alleges that on numerous occasions prior to August 1, 1976, he acted as a real estate broker for owners, purchasers and renters of condominiums at Northridge Lakes and that on August 1, 1976, he had a reasonable expectation of continuing as a real estate broker for them. He alleges that at all times material to the complaint, he used his membership in the Northridge Club to, *"inter alia,* socialize, entertain and show the Clubhouse facilities to prospective purchasers and renters of condominiums at Northridge Lakes."

Plaintiff alleges that several defendants "conspired for the purpose of wilfully and maliciously injuring the plaintiff in his reputation, trade and profession, with the intent of hindering and preventing the plaintiff from competing with the defendants . . . in the sale of condominiums at Northridge Lakes." The plaintiff also alleges that several defendants "conspired for the purpose of wilfully and maliciously hindering and preventing the plaintiff from performing a lawful act, to wit: from

using and enjoying the Northridge Lakes Clubhouse facilities to which . . . he was and is entitled as a member of the Northridge Club."

Plaintiff alleges that the defendants committed the following acts:

On August 1, 1976 and at times thereafter, "without proper cause, unlawfully and maliciously caused the plaintiff to be refused service at the Northridge Lake Clubhouse bar during regular hours and in the presence of other patrons."

On August 1, 1976 and at times thereafter, unlawfully and maliciously caused the plaintiff to be removed from the Northridge Lakes Clubhouse by a security guard employed by the Development Company during the regular hours of the Clubhouse and in the presence of other patrons.

On or about August 2, 1976, a defendant employee of the Development Company falsely and maliciously stated "to City of Milwaukee Police Officers that the plaintiff was not a member of the Northridge Club, that the plaintiff was not entitled to use the Clubhouse facilities, and that he was then and there creating a disturbance at the the Northridge Lakes Clubhouse."

On August 2 and 3, 1976, several defendants did, without proper cause, unlawfully and maliciously cause uniformed City of Milwaukee Police officers to confront and question the plaintiff regarding, *inter alia,* his right to be present in the Clubhouse, and to remove the plaintiff from the Clubhouse during regular hours of the club and in the presence and full view of club patrons.

On or about August 3, 1976, a defendant employee of the Development Company did knowingly, falsely and maliciously speak the following defamatory words to Milwaukee Police officers, to wit: that the plaintiff was "not entitled to use the Clubhouse facilities," that he was then and there "creating a disturbance at the Northridge

Lakes Clubhouse" and that the plaintiff "had on a prior occasion incited a disturbance outside of the Clubhouse," thereby meaning and intending to have the plaintiff wrongfully charged with trespass and disorderly conduct.

Additional allegations applicable to the second "claim" labeled libel, are: that on August 1, 1976, several defendants "did knowingly, falsely, and maliciously, for the purpose of bringing the plaintiff into disrepute, defame and libel the plaintiff by causing the plaintiff to be removed, without proper cause, from the Northridge Lakes Clubhouse by a security guard of the . . . [Development] Company during regular hours of the Clubhouse and in the presence and full view of other patrons, and to be prevented from reentering; thereby intending to create the impression among said patrons and others that the plaintiff was engaging in disorderly conduct and trespassing," and that the defendants "knew that the plaintiff was not trespassing, not engaging in disorderly conduct and was not committing any crime or unlawful act." In this claim and in the other two libel claims, plaintiff alleges that as a direct and proximate result of the acts, he "suffered public ridicule, embarrassment and humiliation, and suffered permanent damage to his personal and professional reputation."

Additional allegations applicable to the third "claim," labeled libel, are: that on August 2, 1976, several defendants "did knowingly, falsely, and maliciously, and without proper cause, for the purpose of bringing the plaintiff into disrepute, defame and libel the plaintiff by causing uniformed City of Milwaukee Police officers to approach the plaintiff while he was seated in the Northridge Lakes Clubhouse bar during regular hours and in the presence and full view of other patrons, and question the plaintiff in the Clubhouse bar, regarding, *inter alia,* his right to be present in the Clubhouse, and remove the plaintiff from the Clubhouse bar, all without

proper cause; thereby intending to create the impression among said patrons and others that the plaintiff was engaging in disorderly conduct and trespassing," and that the defendants "knew that the plaintiff was not trespassing, was not engaging in disorderly conduct and was not committing any crime or unlawful act."

Additional allegations applicable to the fourth "claim," labeled slander, are: that on or about August 3, 1976, a defendant employee of the Development Company, "knowingly, falsely, maliciously and without just cause and for the purpose of bringing the plaintiff into disrepute and subjecting the plaintiff to criminal prosecution, spoke the following defamatory and slanderous words to City of Milwaukee police officers, to wit: that the plaintiff was 'not a member of the Northridge Club,' that the plaintiff was 'not entitled to use the Clubhouse facilities,' that he was then and there 'creating a disturbance at the Northridge Lakes Clubhouse' and that the plaintiff 'had on a prior occasion incited a disturbance outside of the Clubhouse,' thereby meaning and intending to have the plaintiff wrongfully charged with the offense of trespassing and disorderly conduct," that the words set forth above "tended to blacken and injure the honor, and integrity, morality and reputation of the plaintiff and to thereby expose him to public ridicule and contempt," and that the statement made by the defendant employee was known by him and by another defendant to be false and defamatory, and that "[a]s a direct and proximate result of said unlawful act, the plaintiff suffered public ridicule, embarrassment and humiliation, and suffered permanent damage to his personal and professional reputation and has been required to expend monies to consult and retain legal counsel."

Additional allegations applicable to the fifth "claim," labeled libel, are: that on August 3, 1976, some of the defendants "did knowingly, falsely and maliciously, and

without proper cause, for the purpose of bringing the plaintiff into disrepute, defame and libel the plaintiff by causing uniformed City of Milwaukee Police officers to confront the plaintiff while he was seated in the Northridge Lakes Clubhouse bar during regular hours and in the presence and full view of other patrons, confront and question the plaintiff regarding, *inter alia,* his right to be present in said Clubhouse all without proper cause; for the purpose of bringing the plaintiff into disrepute," and, that the defendants "knew that the plaintiff was not trespassing, engaging in disorderly conduct and was not committing any crime or unlawful act."

The motion to dismiss for failure to state a claim, like the previously used demurrer, tests the legal sufficiency of the claim. The facts pleaded and all reasonable inferences from the pleadings are admitted to be true, but only for purpose of testing the legal sufficiency of the claims, not for the purpose of trial. The pleadings are to be liberally construed with a view to substantial justice to the parties. The complaint is not required to state all the ultimate facts constituting each cause of action; and the complaint should be dismissed as legally insufficient only if "it is quite clear that under no conditions can the plaintiff recover." *Ollerman v. O'Rourke,* 94 Wis.2d 17, 24, 288 N.W.2d 95 (1980).

We turn first to the question whether the alleged communications are capable of being given a defamatory meaning and then to the question of whether the claim for slander is sufficient without an allegation of special damages.

## II.

The defendants assert that the complaint fails to state a claim in slander or libel because the pleading fails to

set forth the particular words or conduct complained of as required by sec. 802.03 (6), Stats., and that as a matter of law the alleged communications are not defamatory.

Sec. 802.03 (6), Stats., governs pleading in an action for libel or slander:

"(6) LIBEL OR SLANDER. In an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their publication and their application to the plaintiff may be stated generally."

The pleading in the claim for slander asserts that the following defamatory and slanderous words were spoken: that plaintiff was "not a member of the Northridge Club" and was "not entitled to use the Clubhouse facilities" and that plaintiff was "creating a disturbance at the Northridge Lakes Clubhouse" and "had on a prior occasion incited a disturbance outside of the Clubhouse." The particular words complained of are set forth in the complaint and their publication is stated generally. Therefore the requirements of sec. 802.03 (6) are satisfied.

As to the claims labeled libel, the defendants concede that conduct, rather than words, may be the basis of a libel action,[2] but they argue that the complaint does not describe the conduct with sufficient particularity. This argument has no merit. Sec. 802.03 (6), Stats., refers to words, not conduct, and is not applicable.

The defendants further argue that the words and conduct described in the complaint were not necessarily

---

[2] The plaintiff asserts that defendants' conduct of having him questioned and removed from the Clubhouse constitutes libel. This court recognized in *Schultz v. Frankfort M., A. & P.G. Ins. Co.,* 151 Wis. 537, 139 N.W. 386 (1913), that conduct may be the basis of a libel claim. The court in *Schultz* reasoned that the publication of a cartoon showing a person being followed and watched would "be an actionable libel—an injury to . . . reputation," and that therefore, the acts which the picture represents, accompanied by equal publicity, would constitute libel. *Id.* at 545.

calculated "to create the impression among patrons and others that the plaintiff was engaging in disorderly conduct and trespassing" as the plaintiff has alleged. Defendants argue that their alleged actions and words could have created a different impression among those hearing the words or viewing the conduct.

On a motion to dismiss, it is the function of the court to determine in the first instance whether a communication is capable of a defamatory meaning. *Martin v. Outboard Marine Corp.*, 15 Wis.2d 452, 461, 113 N.W.2d 135 (1962). If the communication is capable of a defamatory as well as a non-defamatory meaning then a jury question is presented. Only if the communication cannot reasonably be understood as defamatory can the motion to dismiss be granted. We described the court's role on a motion to dismiss a complaint alleging defamation in *Schaefer v. State Bar*, 77 Wis.2d 120, 122–124, 252 N.W.2d 343 (1977), as follows:

"Complaints are given a liberal construction in favor of stating a cause of action and are entitled to all favorable inferences which can be drawn from the facts alleged.[1]

"Initially, the court has the obligation of deciding whether a communication is capable of a defamatory meaning.[2] The question on appeal is whether the circuit court was correct in holding that, as a matter of law, the publication was incapable of harming [plaintiff's] reputation.[3]

"In *Lathan v. Journal Co.*, 30 Wis.2d 146, 152–53, 140 N.W.2d 417 (1966),[4] we stated:

" 'Defamation has been defined as:

" ' ". . . that which tends to injure 'reputation' in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him." Prosser, *supra*, page 756.

" 'In *Schofield v. Milwaukee Free Press Co.* (1905), 126 Wis. 81, 85, 105 N.W. 227, we held that for a news-

paper article to be libelous it ". . . need only tend to degrade or disgrace the plaintiff generally, or to subject him to public distrust, ridicule, or contempt in the community. . . ." '

" 'The Restatement, *supra*, page 140, sec. 559, provides that:

" ' "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." '

". . .

"On ruling on demurrer to a complaint in a libel or slander action as to whether the statements alleged are defamatory, we apply the following test:

" 'If the alleged communication is capable of a defamatory meaning, the demurrer must be overruled; and if the language is of such a character that it is capable of a nondefamatory meaning as well as a defamatory meaning, then a jury question is presented whether such communication was understood in fact in a defamatory sense by the persons to whom it was published. *Martin v. Outboard Marine Corp., supra.* If the communication cannot reasonably be considered defamatory or to be so understood, the demurrer must be sustained.' " *Frinzi v. Hanson*, 30 Wis.2d 271, 275–76, 140 N.W.2d 259 (1966).

---

"[1] *Rollie Winter Agency v. First Central Mortgage, Inc.*, 75 Wis.2d 4, 7, 248 N.W.2d 487 (1977).

"[2] *Polzin v. Helmbrecht*, 54 Wis.2d 578, 582–83, 196 N.W.2d 685 (1972).

"[3] *Waldo v. Journal Co.*, 45 Wis.2d 203, 207–08, 172 N.W.2d 680 (1969).

"[4] *Also see Polzin v. Helmbrecht, supra*, n. 2."

The circuit court apparently acknowledged that the alleged communications could be interpreted as imputing disorderly conduct[3] to the plaintiff and that dis-

---

[3] "It is not necessary that the charge be made in technical language. It is enough that the language used imputes to the other the criminal offense." Comment *c*, sec. 571, Restatement (Second) of Torts (1977).

orderly conduct is a crime,[4] but the circuit court dismissed the libel claims because the court concluded as a matter of law that the communication was not defamatory. The circuit court said:

"An allegation today of alleged disorderly conduct is not sufficient so as to harm the reputation of the plaintiff and lower him in the estimation of the community or deter third persons from associating and dealing with the plaintiff."

We agree with plaintiff that even if disorderly conduct is not looked upon by the contemporary community as a serious crime, it does not follow that imputing disorderly conduct to the plaintiff is incapable as a matter of law of lowering the plaintiff in the estimation of the community or deterring third persons from associating or dealing with him. *Converters Equipment Corp. v. Condes Corp.,* 80 Wis.2d 257, 263, 258 N.W.2d 712 (1977); *Lathan v. Journal Co.,* 30 Wis.2d 146, 153, 140 N.W.2d 417 (1966). Because we conclude that the alleged communication is capable of a defamatory meaning, the motion to dismiss must be denied.

### III.

The defendants assert that the claim for slander must be dismissed because there is no allegation of special damages.

---

[4] "947.01 (1975) **Disorderly conduct.** Whoever does any of the following may be fined not more than $200 or imprisoned not more than 90 days or both:

"(1) In a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud, or otherwise disorderly conduct under circumstances in which such conduct tends to cause or provoke a disturbance;"

"939.12 **Crime defined.** A crime is conduct which is prohibited by state law and punishable by fine or imprisonment or both. Conduct punishable only by a forfeiture is not a crime."

As we explained in *Martin v. Outboard Marine Corp.*, 15 Wis.2d 452, 459, 113 N.W.2d 135 (1962), slander originally was not actionable without proof of actual damages of a pecuniary nature, called special damages. Over the years, however, exceptions to this rule developed. Defamatory language imputing unchastity to a woman, defamatory language imputing certain crimes or a loathsome disease to a man or woman, and defamatory language affecting one's business, trade, profession or office were actionable without proof of special damages.

Dean Prosser explains that the reason for the exceptions to the rule is that certain words are by their nature especially likely to cause pecuniary loss and that proof of the defamation itself is sufficient to establish the existence of some damages so that the jury may, without other evidence, estimate the amount of damages. Prosser, *Law of Torts,* sec. 112, p. 754–756 (4th ed., 1971).

In *Earley v. Winn,* 129 Wis. 291, 309, 109 N.W. 633 (1906), this court stated the Wisconsin law as to when special damages need not be proved in slander actions in which there are imputations of criminal conduct:

" 'In case the charge, if true, will subject the party charged to indictment for a crime involving moral turpitude, or subject him to an infamous punishment, then the words will be in themselves actionable.' "

In *Earley,* we discussed at length the meaning of the words "crime involving moral turpitude" and crime subjecting the party to "infamous punishment":

". . . Seemingly, the conclusion reached, after much wavering by English courts, is that any words charging a crime punishable by imprisonment in the first instance are actionable *per se.* Newell, Libel & S. (2d ed.) 96. American courts have differed widely, but many have accepted a rule formulated by SPENCER, J., in *Brooker v. Coffin,* 5 Johns. 188, 'In case the charge, if true, will subject the party charged to indictment for a crime involving moral turpitude, or subject him to an infamous

punishment, then the words will be in themselves actionable.' That rule has been adopted in Wisconsin in *Montgomery v. Decley*, 3 Wis. 709, and different views elsewhere need not be considered. The adoption of this rule is, however, by no means the end of difficulty in ascertaining whether a given charge is slanderous *per se*. It suffices to that end either that the crime charged involves moral turpitude or that the punishment denounced be infamous. What crimes involve moral turpitude has been the subject of vast contention, extending from the view that moral turpitude inheres in every wilful breach of a criminal statute, to the position that only those crimes that present such vileness and depravity as arouses the abhorrence of all mankind are intended. Again, the decalogue, or some other scriptural inhibition, has been thought sufficient by some courts to conclusively ascribe moral turpitude to an act. Several courts have denied that any such characteristic inheres in mere assault and battery, even when the act charged was whipping a mother (*Speaker v. McKenzie*, 26 Mo. 255) ; or "snaking his mother out of doors by the hair of her head . . . the day before she died" (*Billings v. Wing*, 7 Vt. 439). It is probably true that moral turpitude depends on the conception of the community, which is reflected in the utterances of its judges. Keeping a gambling resort is so characterized in some places. *Buckley v. O'Niel*, 113 Mass. 193. We doubt whether a similar view would have been general in Monaco, or even in some of the United States, a few years ago. Wisconsin finds moral turpitude in selling watered milk. *Geary v. Bennett*, 53 Wis. 444, 10 N.W. 602. We confess to the view that such act is in no considerable degree lower in the moral scale than physical violence to one's mother.

"Not only in the respect above mentioned is the aforesaid rule uncertain, but in the use of the expression 'infamous punishment.' Respondent's counsel contend that this expression had a definite meaning at common law, which necessitated some element in addition to mere imprisonment, such as castigation, branding, the pillory, and the like, and that we must assume such limitation for it in this rule. Such significance seems, *a priori*, improbable when we remember that hardly any, if indeed any, of those elements characterized the punishment for any crime at the time of declaring that rule in Wisconsin. While there is pretty general holding in

other states that mere fine is not infamous punishment, and much conflict as to whether mere imprisonment in county jails should be so considered, we do not deem essential review or analysis of those cases, for we consider the latter question settled in this state by *Geary v. Bennett,* 53 Wis. 444, 446, 10 N.W. 602, where, with full deliberation, this court held that fine or imprisonment in the county jail constituted 'infamous punishment, within the meaning of the rule above stated.' That case has been frequently cited with approval, though the exact question now raised has not again been up for consideration. *Campbell v. Campbell,* 54 Wis. 90, 96, 11 N.W. 456; *Ellsworth v. Hayes,* 71 Wis. 427, 434, 37 N.W. 249. We can see no sufficient reason now to depart from a rule of so long standing, and therefore hold that the charge set forth in the complaint is actionable *per se,* because it asserts a crime punishable by imprisonment in the county jail, by force of sec. 4388, Stats. 1898." *Earley, supra,* at 309–311.

Under the *Earley* case, in Wisconsin all crimes involve moral turpitude or subject the accused to infamous punishment, because by definition a crime in this state is conduct prohibited by state law and punishable by fine or imprisonment or both. *See* sec. 939.12, Stats., quoted in margin at note 4.[5] Thus under the *Earley* decision

---

[5] Compare secs. 570 and 571, Restatement (Second) of *Torts* (1977), which provide:

"§570. Liability Without Proof of Special Harm—Slander

"One who publishes matter defamatory to another in such a manner as to make the publication a slander is subject to liability to the other although no special harm results if the publication imputes to the other

"(a) a criminal offense, as stated in §571, or

"(b) a loathsome disease, as stated in §572, or

"(c) matter incompatible with his business, trade, profession, or office, as stated in §573, or

"(d) serious sexual misconduct, as stated in §574."

"§571. Slanderous Imputations of Criminal Conduct

"One who publishes a slander that imputes to another conduct constituting a criminal offense is subject to liability to the other without proof of special harm if the offense imputed is of a type which, if committed in the place of publication, would be

anyone who publishes a slander which imputes any criminal offense (even one punishable by fine or imprisonment in county jail or both) is subject to liability without proof of special damages.

Nevertheless, the circuit court in the present case dismissed the slander claim, reasoning that special damages had to be alleged because "disorderly conduct is not that kind of a crime which is contemplated under the law today as compared with the *Earley Case* which was some sixty-one years ago when disorderly conduct was looked on as a different offense than it is today."

Even if there might be criminal offenses imputed to persons which would not be capable of harming their reputations, we do not view disorderly conduct as such an offense, and we have no reason to depart from the *Earley* case which is a precedent of long standing.

Defendants' brief asserts that if this complaint were held to state a claim, proprietors calling the police would run the risk of libel and slander actions. This argument overlooks the fact that the law affords protections from liability and that certain communications to public officials are privileged. *See, e.g.,* sec. 598, Restatement (Second) of *Torts* (1977).

We conclude that the complaint states claims for libel and slander upon which relief can be granted. The claims denominated libel and slander allege communications which are reasonably capable of defamatory meaning and the claim denominated slander is sufficient without an allegation of special damages.

*By the Court.*—Order reversed.

DAY, J., took no part.

"(a) punishable by imprisonment in a state or federal institution, or
"(b) regarded by public opinion as involving moral turpitude."