Warren A. OGREN, Rachel Weigand, Elsie G. Ogren, Delores Poppe, Eleanor Gruenwald, Kenneth Ogren and Allen Ogren, Plaintiffs-Appellants,

v.

EMPLOYERS REINSURANCE CORPORATION, Eau Claire Press Company, Fred Steffen and Mary Howard, Defendants-Respondents.

Court of Appeals

*No. 83–2194. Submitted on briefs April 9, 1984.—
Decided May 22, 1984.*
(Also reported in 350 N.W.2d 725.)

380

For the appellants the cause was submitted on the briefs of *Lawton and Kissack Law Offices* and *Andrew S. Lawton* of Spooner.

For the respondents the cause was submitted on the brief of *Carroll, Parroni, Postlewaite, Anderson & Graham, S.C.,* and *Arnold P. Anderson* of Eau Claire.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J.  Appellants (Ogrens) are the mother, sister, three uncles, and two aunts of the late Bruce Ogren. They appeal a summary judgment dismissing their libel action for actual and punitive damages against Employers Reinsurance Corporation, Eau Claire Press Company, Fred Steffen, and Mary Howard, who we refer to collectively as the newspaper. The Ogrens challenge the trial court's conclusions that they were not "particularly ascertainable persons" referred to in an allegedly libelous article the newspaper printed, and that the newspaper corrected the allegedly libelous statements by printing

and labeling as a "retraction" a letter from the Ogrens' attorney. Because only members of Bruce Ogren's immediate family were particularly ascertainable persons who could maintain a libel action against the newspaper, and because the newspaper's retraction precluded the Ogrens' recovery of punitive damages, we affirm the dismissal of the aunts' and uncles' claims, and we reverse the dismissal of the mother's and sister's claims for actual damages and remand the cause with directions to the trial court to reinstate their complaint for actual damages.

An article in the Eau Claire Leader Telegram reported Bruce Ogren's apparent suicidal death. It contained the following statements:

Bruce might have fared better if his family had not abandoned him. . . . [A] family can offer guidance and love that agencies cannot. His guardian, Gregerson, feels certain that a loving family would have made the difference for Bruce.

The Ogrens had their attorney draft a letter giving their account of the history of Bruce's relationship with his family. Their attorney sent the letter to the newspaper and demanded a retraction of the alleged defamatory statements. The newspaper printed the letter in the same location and with the same size of headline and type as the earlier article. It made no comment about the letter except to identify its source and to note the earlier article, and it stated that the information in the letter was "published as a retraction as demanded."

The trial court granted the newspaper's motion for summary judgment based on its conclusion that, as a matter of law, the plaintiffs were not particularly ascertainable as the persons to whom the allegedly libelous article referred. We will reverse a summary judgment if the record shows that material facts are in dispute or if a legal issue was incorrectly decided. *Arnold v.*

*Shawano County Agricultural Society*, 106 Wis. 2d 464, 469, 317 N.W.2d 161, 164 (Ct. App. 1982), *aff'd*, 111 Wis. 2d 203, 330 N.W.2d 773 (1983).

Defamatory words are not libelous unless they refer to an ascertained or ascertainable person. "[C]ertainty as to the person or persons defamed must appear from the words themselves." *De Witte v. Kearney & Trecker Corp.*, 265 Wis. 132, 137, 60 N.W.2d 748, 751 (1953). When the publication refers to all members of a small group, the defamed persons are ascertainable. *See id.* The Restatement (Second) of Torts § 564A (1977), states that one who publishes defamatory matter concerning a group or class of persons is liable to an individual member only if (a) the group or class is so small that the matter can reasonably be understood to refer to the member, or (b) the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member. This rule appears to be in harmony with Wisconsin law, and we apply it to this case.

No Wisconsin case decides whether the term "family" encompasses a group small enough that libelous statements about it can reasonably be understood to refer to each member. Decisions in other states based on different facts reach different results. *See Louisville Times v. Stivers*, 68 S.W.2d 411 (Ky. 1934) (statements about a family or clan feud had no personal application); *Fenstermaker v. Tribune Pub. Co.*, 43 P. 112 (Utah 1895) (statement about family residing at Box Elder ranch referred to ascertainable persons). Two common meanings of the word "family," however, could apply to the term's use in the newspaper's article: (1) "A group of persons of common ancestry," and (2) "the basic unit of society having as its nucleus two or more adults living together and cooperating in the care and rearing of their

own or adopted children." Webster's New Collegiate Dictionary 414 (1977).

Bruce's aunts and uncles cannot reasonably be ascertained as persons referred to in the newspaper article. The first definition of "family" would include all persons sharing a common ancestry with Bruce Ogren. Depending upon which ancestor is shared, this definition would cover a very large group, extending well beyond aunts and uncles. Used in this sense, the term "family" refers to too large a group from which to ascertain individual plaintiffs. In addition, there are no circumstances that would reasonably lead to the conclusion that the article referred to these particular aunts and uncles. The second definition of family normally covers only parents and siblings unless other adults are identified as living together and rearing children. The article about Bruce gives no indication that any of Bruce's aunts and uncles are included in this definition of his family. The trial court correctly concluded as a matter of law that Bruce's aunts and uncles could not maintain an action against the newspaper.

Bruce's mother and sister, however, could maintain an action against the newspaper. They are both members of the more limited definition of family. This definition covers a group so small that reference to it could reasonably be understood to apply to its individual members. The newspaper's article speaks of a family offering "guidance and love," elements associated with the "care and rearing" of children. The words of the article make certain that the reference to "his family" included Bruce Ogren's immediate family of parents and siblings. The article can therefore be reasonably understood to refer to Bruce's mother and sister, and the judgment dismissing their complaint must be reversed.

Finally, the trial court properly concluded that the Ogrens could not recover punitive damages from the newspaper. The newspaper indicated that the Ogrens' letter was being "published as a retraction" as demanded by the Ogrens' attorney. Although an express apology and elaboration of their story might have been more satisfactory to the Ogrens, the newspaper's use of the word "retraction" indicated that it accepted as true the facts stated in the Ogrens' letter. These facts were sufficient to correct the newspaper's earlier statement that Bruce's family had abandoned him. The letter, printed as a retraction as required by sec. 895.05(2), Stats.,[1] constituted a complete defense to the Ogrens' demand for punitive damages. *See Hucko v. Joseph Schlitz Brewing Co.,* 100 Wis. 2d 372, 379, 302 N.W.2d 68, 73 (Ct. App. 1981).

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded with directions. No costs to either party.

---

[1] Section 895.05(2), Stats., provides in part:

To the extent that the true facts are, with reasonable diligence, ascertainable with definiteness and certainty, only a retraction shall constitute a correction; otherwise the publication of the libeled person's statement of the true facts, or so much thereof as shall not be libelous of another, scurrilous, or otherwise improper for publication, published as his statement, shall constitute a correction within the meaning of this section. A correction, timely published, without comment, in a position and type as prominent as the alleged libel, shall constitute a defense against the recovery of any damages except actual damages, as well as being competent and material in mitigation of actual damages to the extent the correction published does so mitigate them.