Michelle KENNEDY and Dale
E. Kennedy, Plaintiffs--
Appellants,

v.

CHILDREN'S SERVICE SOCIETY OF WISCONSIN, Frank Gaunt, St. Paul Fire and Casualty Insurance Company, and Colonia Insurance Company, Defendants--Appellees.

No. 93-2312.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 6, 1994.

Decided Feb. 24, 1994.

Robert Sutton, Milwaukee, WI (argued), for Michelle Kennedy and Dale E. Kennedy.

Scott Ritter (argued), Hogan, Ritter, Minix & Comeau, Milwaukee, WI, for Children's Service Soc. of Wisconsin, Frank Gaunt and St. Paul Fire and Cas. Ins. Co.

Donald M. Lieb, Otjen, Vanert, Stangle, Lieb & Weir, Milwaukee, WI, for Colonia Ins. Co.

Before CUDAHY, COFFEY, and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

Children's Service Society of Wisconsin ("CSS") withdrew from facilitating an adoption because it believed the adoptive parents were members of a cult. The parents adopted the child through another agency and sued CSS for defamation, breach of contract and intentional infliction of emotional distress. The district court granted summary judgment for the defendants. We affirm.

I.

Mary Shelby, five months pregnant, planned to give her child up for adoption by the plaintiffs, Dale and Michelle Kennedy of Washington state. Shelby, a Wisconsin resident, contacted CSS in December 1990 to obtain pregnancy counseling and to facilitate termination of her parental rights. CSS agreed to receive guardianship of the child between the time of the termination hearing and the final adoption by the Kennedys. CSS's fees would be paid by the Kennedys.

Under Wisconsin law, the guardianship agency must arrange for a home study of prospective adoptive parents. Wis.Stat. § 48.88(2)(a)(1) (1991). CSS arranged for Norma Spoonemore of Lutheran Social Services of Seattle, Washington to conduct a home study of the Kennedys. In early March 1991, Spoonemore sent her report to Frank Gaunt, the director of CSS. The report listed the Kennedys' religion as "The Way International" ("TWI"). When Gaunt's secretary informed him that TWI was a cult, Gaunt began an investigation. He reviewed the literature about TWI, consulted a cult specialist referred by the Milwaukee Psychiatric Hospital and contacted a member of a national cult awareness group. He did not reveal the plaintiff's identity in these inquiries. Based upon this research, Gaunt believed that TWI was a cult, and that some of the members used mind control, required deprogramming upon leaving and isolated themselves from the rest of society.

On March 5, Gaunt telephoned Spoonemore to ask if she knew about TWI. He told her that he believed TWI was a cult and that some of its members required deprogramming. On March 14, he again called Spoonemore and told her that CSS was considering withdrawing from the Shelby–Kennedy adoption because of CSS's concerns about the Kennedys' involvement in TWI. Shortly thereafter Gaunt sent a letter confirming CSS's withdrawal.

On March 7, Gaunt met with Mary Shelby. He inquired whether she knew the Kennedys were affiliated with a cult and that some TWI members opposed social contacts outside of the group. Shelby testified at her deposition that she was aware of the Kennedys' involvement in TWI but disagreed with Gaunt's characterizations of the group's practices.

On March 12, Gaunt contacted Lincoln Murphy, Shelby's attorney for the adoption. Gaunt informed Murphy that CSS might withdraw from the adoption because of the Kennedys' affiliation with TWI.

CSS withdrew from the process. The Kennedys arranged for a different agency to assume temporary guardianship of the baby after termination of Shelby's parental rights. The Kennedys had to spend approximately $2500 to pay the higher fees at the second agency, approximately $800 in additional attorney's fees to find a new agency and long distance phone bills. The adoption otherwise went forward, and on April 9 Shelby's baby was placed with the Kennedys.

The Kennedys filed suit against CSS, Gaunt and CSS's insurers, St. Paul Fire and Casualty Insurance Company and Colonia Insurance Company, alleging defamation, breach of contract and intentional infliction of emotional distress. They sought $50,000 compensatory damages and $100,000 punitive damages. The district court granted summary judgment in favor of the defendants,[1] finding that the Kennedys had not stated a defamation claim and that the statements in question were privileged; that there was no breach of contract; and that they had failed to state a claim of intentional infliction of emotional distress. The Kennedys appeal the court's grant of summary judgment.

## II.

We review the district court's grant of summary judgment *de novo*. Summary judgment will be granted if there is no genuine issue of material fact requiring trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over material facts is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

## A. *Defamation*

The Kennedys claim that Gaunt defamed them on three occasions: the March 5 telephone conversation with Norma Spoonemore; the March 7 conversation with Mary Shelby; and the March 12 conversation with Lincoln Murphy. The Kennedys claim that in all three instances Gaunt said they were unsuitable adoptive parents because they belonged to a cult. To state a claim for defamation, the Kennedys must allege: (1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the person defamed; and (3) that the statement is unprivileged and tends to harm one's reputation so as to lower one in the estimation of the community. *Munson v. Milwaukee Bd. of School Directors,* 969 F.2d 266, 271 (7th Cir.1992); *Stoll v. Adriansen,* 122 Wis.2d 503, 517, 362 N.W.2d 182, 190 (Ct.App.1984).

The defendants first contend that the Kennedys do not have standing to sue for defamation because any critical remarks referred only to TWI rather than to the Kennedys themselves. In Wisconsin, a statement about a group or class is not defamatory unless it refers to an ascertained or ascertainable person. *Ogren v. Employers Reinsurance Corp.,* 119 Wis.2d 379, 382, 350 N.W.2d 725, 727 (Ct.App.1984). One who publishes a statement about a group is liable to an individual member only if the group is so small that the matter can reasonably be understood to refer to the member, or the circumstances indicate that there is particular reference to the member. *Id.*

Although Gaunt contends that his statements that TWI members used mind control and isolated themselves from society were neither intended nor understood as referring to the Kennedys themselves, they arose solely in a discussion of the Kennedys' suitability as adoptive parents. In these circumstances, Gaunt's criticisms of TWI and questions

1. Although defendant Colonia Insurance did not join in the other defendants' motion for summary judgment or file a motion of its own, the district court granted summary judgment in its favor *sua sponte*. If one defendant is granted a motion for summary judgment, the district court may sua sponte enter summary judgment in favor of non-moving additional defendants "if the motion raised by the first defendant is equally effective in barring the claim against the other defendants, and the plaintiff had an adequate opportunity to argue in opposition to the motion." *Colan v. Cutler–Hammer, Inc.,* 812 F.2d 357, 360 n. 2 (7th Cir.), *cert. denied,* 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987). Accordingly, we affirm the district court's grant of summary judgment as to defendant Colonia as well.

about the Kennedys' suitability overlap, and it would have been reasonable for a listener to infer that Gaunt's statements about TWI applied to the Kennedys. The district court found that deposition testimony indicated that Gaunt was not understood to refer to the Kennedys themselves. However, the court found that the Kennedys did have standing to challenge Gaunt's claims that they were unsuitable parents because of their affiliation with TWI. In the end, the result is the same, since it is clear that Gaunt's statements that the Kennedys were unsuitable parents because they belonged to a cult could give rise to a claim of defamation.

■ The Kennedys' defamation claim fails, however, because they failed to plead or prove special damages. In a libel case (where the defamatory words are written or printed), there is a presumption that the defamed person suffered general damages such as injury to reputation. *Williams v. Hicks Printing Co.*, 159 Wis. 90, 101–02, 150 N.W. 183, 188 (1914). In a slander case (where the defamatory words are spoken), a plaintiff is not entitled to general damages until she has proven special damages, or specific monetary loss. *Starobin v. Northridge Lakes Dev. Co.*, 94 Wis.2d 1, 13, 287 N.W.2d 747 (1980).

The Kennedys alleged that Gaunt's actions caused them stress and harm to reputation, but these general damages cannot be a basis for recovery absent proof of special damages. The only special damages the Kennedys plead are the additional costs incurred securing a new adoption agency: higher agency fees, additional lawyers' fees and long distance telephone bills. None of these special damages, however, stem from the alleged defamatory remarks. Had Gaunt merely withdrawn from the adoption proceedings without giving any reasons or making the alleged defamatory remarks, the plaintiffs would have incurred these same expenses securing a new adoption agency. Conversely, had Gaunt made the defamatory statements yet continued with the adoption, the plaintiffs would not have been injured. At her deposition Michelle Kennedy testified:

Q: If Frank Gaunt had said the same things to Norma Spoonemore you understand he said but if Children's Service Society of Wisconsin then nonetheless continued the adoption, would you have suffered any damage?

A: .... I wouldn't have been really happy about that statement. But had he continued with the adoption, I would have said, well, great, you know, great he is continuing with the adoption, that's as it should be because Mary Sue Shelby wants us.

And so, see, what I'm saying is it wouldn't have made me happy, you know, it wouldn't have blessed me he thought that. But then you know—if he would have continued with the adoption, we wouldn't have had—the rest of the things wouldn't have ensued.

(Deposition of Michelle Kennedy, at 16–17).

■ There are, however, four types of slander for which damages will be presumed: imputation of certain crimes; allegations affecting one's business, trade, profession or office; imputation of a loathsome disease; or imputation of unchastity to a woman. *Starobin*, 94 Wis.2d at 13, 287 N.W.2d 747. The Kennedys contend that Gaunt's statements that they were not suitable parents because they belonged to a cult imputed to them the "crime" of "unfit parenthood." Since child abuse, neglect and abandonment are punishable under the Wisconsin criminal code, *see* Wis.Stat. §§ 948.03–948.22 (1991), they argue that the statement that they are unfit parents imputes criminal activity. However, they have not pointed to any statements in which Gaunt implied that the Kennedys had committed these or any other crimes. CSS's determination that the Kennedy home would be unsuitable for placement imputes no criminal activity.

The Kennedys also argue that parenting is a "trade or profession," and therefore Gaunt's allegations are slander per se. We know of no Wisconsin court that has recognized "parenting" as a trade or profession for these purposes. The Restatement (Second) of Torts § 573 canvasses the scope of the "trade, business or profession" rule and cites examples squarely within the plain meaning of the words. The Kennedys offer no good

reason why we should twist the meaning of this common law exception here.

Since the Kennedys have failed to allege special damages resulting from the defamation, and the alleged defamatory statements do not fit any of the categories of slander per se, they have failed to state a necessary element of a defamation claim.

▪ Even if plaintiffs had properly alleged special damages, they could not recover for defamation because the defendants' statements were privileged.[2] An otherwise defamatory statement is conditionally privileged if it is made in furtherance of a common property, business or professional interest. *Zinda v. Louisiana Pacific Corp.*, 149 Wis.2d 913, 922–23, 440 N.W.2d 548, 552 (1989). There will be no liability if the defendant "correctly or reasonably … believe[s] that there is information that another sharing the common interest is entitled to know." *Id.* at 922, 440 N.W.2d 548, *quoting* Restatement (Second) of Torts § 596. Whether an interest is protected by the conditional privilege is a question of law. *Wildes v. Prime Mfg. Corp.*, 160 Wis.2d 443, 450–51, 465 N.W.2d 835 (1991).

Gaunt's statements were clearly well within the limits of a conditional privilege. Gaunt's conversations about the Kennedys were made in furtherance of CSS's professional duties as counselor to Shelby and future guardian of her child. It was entirely reasonable for Gaunt to believe that Shelby was entitled to know his opinion of the adoptive parents' religion; that Lutheran Social Services' social worker Spoonemore was entitled to know about the practices of the religion she had listed on the home study; and that Shelby's lawyer Murphy was entitled to know the reasons for CSS's withdrawal from the process. Not only was it reasonable for Gaunt to communicate his concerns, but as the guardian of the child after termination of parental rights, CSS would have assumed an affirmative duty to act in the best interests of the child.

The Kennedys maintain that under *Zinda*, the conditional privilege applies only to co-workers or superiors and cannot cover Gaunt's conversations with Shelby, her lawyer or Spoonemore. In *Zinda*, an employer published an allegedly defamatory statement about an employee in a company newsletter. Although *Zinda* noted that the common interest privilege was "particularly germane to the employer-employee relationship," 149 Wis.2d at 923, 440 N.W.2d 548, it defined "common interest" more broadly to include common "property, business or professional" interests. *Id.* Clearly Gaunt's statements to the birth mother, her lawyer and a social worker about the adoption concerned common professional interests.

▪ A conditional privilege may be forfeited if abused. *Id.* at 924, 440 N.W.2d 548. A conditional privilege is abused if: (1) the defendant knows or recklessly disregards the truth; (2) the defamatory matter is published for a purpose other than that for which the privilege is given; (3) the publication is made to some person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege; (4) the defamatory statements are not reasonably believed to be necessary to accomplish the purpose for which the publication is privileged; or (5) the publication includes unprivileged matter. *Id.* at 925, 440 N.W.2d 548. Abuse of conditional privilege is a jury question "unless the facts are such that only one conclusion can be reasonably drawn." *Id.* at 926, 440 N.W.2d 548.

The Kennedys have offered no evidence to support the conclusion that Gaunt abused his conditional privilege. They argue only that he had not personally interviewed the plaintiffs, from which we apparently are to conclude that he did not have a basis for his opinions. However, they offer no other evidence that Gaunt's statements were made in reckless disregard of the truth. Nor do they allege that he spoke to unnecessary parties or spoke on subjects unrelated to the Kennedys' suitability as parents. Absent any such

2. The defendants argue for the first time on appeal that their statements were absolutely privileged because they were made in the context of litigation. Since we find a conditional privilege, and the absolute privilege issue was not raised before the district court, we decline to reach it here.

allegations or evidence, we can only conclude that Gaunt did not abuse his privilege.

## B. Breach of Contract

■ The Kennedys also claim that CSS's withdrawal from the adoption breached both a contract between Kennedy and CSS, and a contract between Shelby and CSS, of which the Kennedys were third-party beneficiaries. The district court noted that "[i]t is undisputed that the Kennedys did not have a direct contractual relationship with CSS to provide services." On appeal, the Kennedys argue that they did have a direct contract with CSS for CSS to process the adoption. However, they point to nothing in the record and allege no new facts to indicate the existence of such a contract. On the contrary, the record supports the conclusion that there was no direct contract between Kennedy and CSS. At her deposition, Michelle Kennedy stated that neither she nor her husband had ever entered into a contract with CSS. The Kennedys' answers to interrogatories also stated that the only contract in existence was an oral agreement between Shelby and CSS. Although the Kennedys did agree to pay Shelby's legal and adoption fees, they both testified in their depositions that they entered into this agreement with Lincoln Murphy, Shelby's attorney, rather than with CSS. Since the Kennedys have presented no evidence of a contract between CSS and the Kennedys, they cannot maintain an action for breach of contract.

The Kennedys argue as well that they were third-party beneficiaries of the oral contract between Shelby and CSS. This contract consisted of the December 1990 conversation between Shelby and Donna Adams, a CSS counselor, in which Adams agreed that CSS would counsel Shelby and assume guardianship of the child until adoption proceedings were complete.

■ To be considered a third-party beneficiary, a party must establish that the contract was entered into directly and primarily for her benefit, and the benefit must be more than merely incidental to the agreement. *Mercado v. Mitchell,* 83 Wis.2d 17, 28, 264 N.W.2d 532 (1978); *Schell v. Knickelbein,* 77 Wis.2d 344, 348, 252 N.W.2d 921,

924–25 (1977). The Kennedys claim they were third-party beneficiaries because they had agreed to pay Shelby's fees in the adoption. These facts are insufficient to show that the contract between Shelby and CSS was entered into "primarily" for their benefit. Shelby knew she wanted the Kennedys to adopt her baby and she went to CSS to counsel her and arrange the termination proceedings. Although the Kennedys stood to benefit from the successful performance of the contract, there is no evidence that the contract was "primarily" for their benefit rather than Shelby's. Perhaps the Kennedys could have brought forth more evidence about the nature of the contract, but the fact that the Kennedys would pay fees does not alone make them third-party beneficiaries and they therefore cannot sue for breach of contract. Moreover, the Kennedys have not shown that CSS's decision to withdraw from the process breached the oral contract; on the contrary, CSS appeared to be performing its duties as the guardianship agency when it decided that it would not agree to place the baby in the Kennedy home.

## C. Intentional Infliction of Emotional Distress

■ The Kennedys also made a claim for intentional infliction of emotional distress. To recover damages for intentional infliction of emotional distress, a plaintiff must show: 1) that the defendant's conduct was intentional, that is, the defendant behaved as he did for the purpose of causing emotional distress; 2) that the defendant's conduct was extreme and outrageous; 3) that defendant's conduct caused the injury; and 4) that the plaintiff suffered an extreme and disabling emotional response to the conduct. *Alsteen v. Gehl,* 21 Wis.2d 349, 359–60, 124 N.W.2d 312 (1963).

The plaintiffs have failed to state a claim of intentional infliction of emotional distress. They adduced no evidence that Gaunt or CSS intended to cause the plaintiff's emotional distress. Neither did the plaintiffs allege facts sufficient to support a finding that Gaunt or CSS's behavior was "extreme and outrageous." Extreme or outrageous behavior means that "the average member of the community must regard the defendant's con-

duct in relation to the plaintiff as being a complete denial of the plaintiff's dignity as a person." *Id.* This is a high standard, and Wisconsin courts have been reluctant to find conduct sufficiently extreme to meet this test. *See Nelson v. Monroe Regional Medical Ctr.,* 925 F.2d 1555, 1559 (7th Cir.), *cert. dismissed,* —— U.S. ——, 112 S.Ct. 285, 116 L.Ed.2d 236 (1991). Certainly CSS's withdrawal from the adoption or the statements about TWI cannot in any way be considered "extreme or outrageous," or "a complete denial of the plaintiff's dignity." CSS was responsible for counseling Shelby, for obtaining a home study and for ensuring the placement was suitable. By communicating its concerns to the birth mother, her lawyer and a social worker, and by eventually declining to participate in the adoption, CSS behaved appropriately.

Lastly, the plaintiffs did not allege that they suffered an extreme or disabling response to Gaunt's conduct. Although they testified that they had to expend additional time and money and suffered stress, they did not allege that their distress was disabling. Accordingly, they have failed to allege a claim of intentional infliction of emotional distress.

For these reasons, the district court's grant of summary judgment in favor of the defendants is AFFIRMED.